RAY SANBORN, *an infant, by his next friend, Charlotte Sanborn,* v. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. RAILROAD MACHINERY — *Company not Culpably Negligent.* Where, in an action against a railroad company to recover damages for personal injury received by an employé in attempting to oil an iron punch driven by iron cog-wheels, which are six or seven feet from the ground or floor of the machine shop, the evidence offered shows that it is not usual to box or fence such machinery, and that the machinery is so arranged with a tight and loose pulley that if a person is going to oil or repair it he can immediately stop the same by simply throwing the belt upon the loose pulley, *held,* that the failure or negligence to box or fence such cog-wheels is not of itself culpable negligence on the part of the company.

2. ——— *Avoidance of Danger; Presumption.* A young man of the age of seventeen years and seven months is presumed to have suf-

. ficient capacity to be sensible of: danger, and to have the power to avoid it; and this presumption will stand until overthrown by evidence of the absence of such discretion as is usual with persons of that age.

### Error from Shawnee District Court.

ON February 17, 1883, *Ray Sanborn,* an infant, who sues by his next friend, Charlotte Sanborn, commenced his action against *The Atchison, Topeka & Santa Fé Railroad Company* to recover damages, and in his petition alleged :

"That on the 19th day of February, 1881, and prior thereto, the defendant had been, was, and is the owner of and operating a railroad in Shawnee county, Kansas, and certain machinery connected with its said road, situate at the city of Topeka, in said county, among, or a part of which it owned and operated a certain 'iron punch,' run and operated by steam, by said defendant as aforesaid; that plaintiff was at the time of the grievances hereinafter stated in the employment of the defendant, and hired to serve said defendant in and about said machinery, and was of tender years, to wit, seventeen years of age, and ignorant and unskilled in operating and working such machinery; and was on said date in the employment of said defendant, under the charge and direction of H. S. Benton, the foreman, in operating said machinery as agent, and in the employment of said defendant, and as such authorized and empowered by said defendant to operate said machinery, and to govern and control the men and other employés, including plaintiff, in the employment of said defendant, then and there being; that said defendant, by its foreman and employé, well knowing that plaintiff was unskilled and ignorant in operating said machinery, negligently ordered and directed plaintiff to oil and lubricate parts of certain cogs belonging to said machinery employed in operating said iron punch, as aforesaid, which said cogs were by the negligence and mismanagement of said defendant and its employés left in an exposed, unprotected and dangerous condition; and the said plaintiff, in obedience to said order of said Benton on said date, using ordinary skill and judgment, and without any fault and neglect, whilst in the act of supplying the cup of said cogs had his right hand and arm caught by and between said cogs and then and there crushed, mutilated and wounded in such a manner as to, and he did, suffer amputation of said arm below the elbow, and which said accident was caused by the negligence

and mismanagement of defendant and its employés by not then and there having said cogs boxed up and covered and protected as the same should and could have been, and by not having the said machinery otherwise properly constructed and adjusted as defendant was required to do; and in consequence of the said negligence and mismanagement of said defendant and its agents and employés, plaintiff has become and is rendered a permanent cripple; and in consequence of said injury plaintiff became sick, sore and disordered, and so remained for a long space of time, to wit, three months, during all of which time plaintiff suffered and endured great pain, and thereby plaintiff was forced to and did then and there lay out large sums of money, amounting in the whole to two hundred dollars, in and about being ministered to and treated in said sickness, lameness and disorder, and also thereby plaintiff incurred other and further divers expenses, damages and injuries, all and total amounting to the great sum of ten thousand dollars, for which plaintiff asks judgment, costs, and other relief as by law in such cases provided."

On March 13, 1883, the company filed the following answer, omitting court and title:

"Now comes the defendant, and for answer to the petition of plaintiff in the above-entitled cause —

"1. Denies each and every material allegation therein contained.

"2. For a second and further defense, the defendant says that the injuries, if any, received by said plaintiff were occasioned wholly by his negligence (gross), and without fault of the said defendant, its agents or servants.

"3. For a third and further defense, defendant says that the injuries, if any, received by said plaintiff were occasioned wholly by the negligence of said plaintiff, or his coëmployés and fellow-servants, and without fault of the said defendant.

"Wherefore, said defendant prays judgment for costs."

On April 4, 1883, the plaintiff moved the court to strike out the second and third paragraphs of the answer of defendant, which motion, upon the hearing thereof, was overruled. Subsequently, the plaintiff filed a reply to the second and third paragraphs of the answer. Trial at the January Term, 1884. Upon the conclusion of plaintiff's evidence, the defendant interposed a demurrer thereto, which was sustained

by the court and the jury discharged. Plaintiff thereupon filed a motion for a new trial, which, upon hearing, was overruled. Plaintiff excepted to the rulings of the court upon the demurrer to the evidence and the motion for a new trial, and brings the case here.

*H. P. Vrooman*, and *Jetmore & Son*, for plaintiff in error.

*A. A. Hurd, C. N. Sterry*, and *W. C. Campbell*, for defendant in error; *Geo. W. McCrary*, general counsel.

The opinion of the court was delivered by

HORTON, C. J.: Action by Ray Sanborn, by his next friend, for a personal injury. The petition alleged that Ray Sanborn was ordered by H. S. Benton, the foreman of the boiler shop of the railroad company, at Topeka, to oil and lubricate parts of certain cogs belonging to or running an iron punch in the shop of the company; that whilst in the act of supplying the cup of the cogs with oil, his right hand and arm were caught by and between the cogs and so mutilated that amputation of the arm below the elbow was necessary; that the accident was caused by the negligence and mismanagement of the company in not having the cogs boxed up and protected as the same should and could have been, and in not having the machine otherwise properly constructed and adjusted as the company was required to do. There is no evidence in the record tending to show that the company was guilty of any negligence in failing to cover or further protect the cogs of the wheels where Sanborn was injured, and no evidence whatever tending to show that the iron punch and all the machinery connected therewith was not properly constructed and adjusted.

John M. Stebbins, a witness called by the plaintiff, among other things testified that —

"He was a boiler-maker by trade, and had worked in that business for forty years; that at the time of the injury complained of he was working as a mechanic in the boiler shop of the railroad company at Topeka, and had been working in the shop for that company about fifteen months; that he knew of the accident very soon afterwards, but did not see it; that

there were two punches somewhat similar in the shop—a heavier punch and a lighter punch; that anybody in the shop who desired could use the small punch; that it was used for general purposes, like punching $\frac{1}{4}$-inch, $\frac{5}{16}$, $\frac{1}{2}$-inch and $\frac{3}{4}$ holes; that the pinion wheel was between five and six feet from the floor; that a shaft driving the punch runs across near the top of the machine; that right in the rear of the pinion wheel is a journal, with a cup on it; that in the top there is a recess where oil is put and holes to let the oil down to the journal; that to put the oil in you have to put it into the oil-holes; that Sanborn could have oiled the machine from the ground, but by getting on a box that was there, he was able to reach more easily where the oil box was; that if he had used his left hand there would have been no danger; that he had operated other machines propelled with wheels and cogs like the iron punch; that he had had experience with such machines —as much as any ordinary man that works in the business; that there was no way in which a person could be caught and injured in the wheel when standing in front of the punch; that a person could oil it just as easy that way; that if a person would get something to stand on in front he would be perfectly safe; that where the belt runs a double wheel comes up; that there is a tight and loose pulley with the machine; that when the belt is on the loose pulley it does not run the machine; that by using the 'shifter' a person can put the belt onto the tight or loose pulley; that a person standing in front could stop the machine; that a person standing up on a box for the purpose of oiling on top could reach up and shove the 'shifter' and stop the machine; that a person could stop the machine to oil it, but this was not the usual method; that before the accident there was no ordinary mode of protecting the machinery."

Joseph Heslett, called by the plaintiff as a witness, testified:

"That he is a machinist, and had been among machines all his life; that he was acquainted with the iron punch where the accident happened, and was acquainted with the construction of machines similar to that one; that he was in the machine shop when Sanborn was hurt, but about 400 yards away; that there was no necessity for protecting such machinery; that when such machinery is down on the floor, or working on the floor, it is usual to protect it, but when it is five or six feet from the ground, it is not protected; that it is not usual or customary to fence or box machinery that is six or seven feet

from the ground; that he put the machine up, and that there is a 'shifter' and a tight and loose, pulley; that if a person was.going to oil the machine, he would simply throw the belt onto the loose pulley and.the machine would immediately stop; that if anyone wanted to repair the machine, that is the proper method to stop it, and that is what the loose pulley is put there for; that it was the orders before the accident occurred to stop the machine to oil it; that he had seen the machine oiled without being stopped, and he had seen the machine stopped for the purpose of being oiled; that the orders were positive to stop the machine when cleaning and oiling."

John Mangan, called as a witness for the plaintiff, testified:

"That he was a boiler-maker, and had worked for twenty-eight years in that business, and in nearly half of the machine shops of the United States; that he was acquainted with the iron punch and the machinery where the accident occurred; that he was at work for the railroad company in its boiler shop in Topeka at the time; that prior to the accident there was no ordinary way of protecting such machinery by boxing or fencing to prevent accidents; that he never saw a machine of the kind that injured Sanborn boxed before the accident."

Sanborn himself testified:

"That he had been at work as a helper in the boiler shop for a year and ten months; that in the room in which he worked were five machines—two punches, one planer, and two drills; that two of them, the large punch and drill, had been there during all of his service; that the smaller punch, on which he was injured, had been there for about five months; that he knew how the punch was started and stopped; that there were two pulleys, and the belt was shifted from the main pulley onto the loose pulley by a shifter; that he saw others do it; that he had seen other men oil the machine as he was doing; that they never got hurt, and that he oiled it in the usual and customary way in which he had seen others oil it."

At the time of the accident, Sanborn was in possession of all his faculties and all his senses. The two cog-wheels were about six feet from the ground or floor, and there was nothing to prevent him from seeing that the cogs were not boxed or fenced, and every act that directly contributed to bring about the injury was his own. Of course he did not intend to get injured. He did not intend to have his hand caught between

the cogs where it was crushed, but accidentally his hand got low enough down to be caught; and thus his injury occurred. For this accidental injury he is not entitled to compensation from the company. (*A. T. & S. F. Rld. Co. v. Plunkett*, 25 Kas. 188; *Railroad Co. v. Smithson*, 45 Mich. 212; *Sullivan v. Manufacturing Co.*, 113 Mass. 396.)

It is said, however, that Benton, the foreman of the defendant's shop, ordered Sanborn to run the punch and to oil the machinery; that he was an infant of tender years, ignorant and uninformed, and therefore this was such negligence that he is entitled to recover damages. As there is no direct allegation in the petition that this caused the injury complained of, it is doubtful whether the question sought to be presented is in the case. If it were a matter for our determination, we do not think any culpable negligence is shown on the part of the company or its foreman. At the time of the accident plaintiff was seventeen years and seven months of age. He was not, therefore, in law, an infant of tender years. In this state, if a minor be over fourteen years of age and of sound intellect, he may select his own guardian. In this state, a person over sixteen years of age convicted of any felony or other offense must suffer the punishment prescribed by the statute to the same extent as if he had reached majority. We therefore think it may be presumed that a person of the age of Sanborn at the time he was injured, has sufficient capacity to be sensible of danger and to have the power to avoid it, and that this presumption will stand until overthrown by evidence of the absence of such discretion as is usual with persons of that age. (*Nagle v. Railroad Co.*, 88 Pa. St. 35.) There was no evidence offered tending to show that Sanborn was limited in his mental capacity, or was in any way feeble-minded. We fully recognize the doctrine that it may be negligence to set an infant of tender years to work upon a dangerous machine without pointing out its dangers, but considering the age of the injured party and the length of time he had worked in the shop of the rail-

*1. Railroad company not culpably negligent.*

*2. Avoidance of danger; presumption.*

road company before being hurt, the case presented does not come within that rule.

It is unnecessary in this case to decide whether the plaintiff had the right to prove that the company, subsequent to the accident, boxed up or inclosed the machinery inflicting the injury. Even if the ruling was erroneous, it was immaterial upon the facts disclosed, and therefore not prejudicial. The most that can be said in that matter is, that the company, as a measure of extreme caution, adopted additional safeguards as' to such machinery after the unexpected accident had occurred to Sanborn. The declarations of Benton, the foreman, subsequent to the accident, were not parts of the *res gestæ*, and ought not to have been received in evidence. (*K. P. Rly. Co. v. Pointer*, 9 Kas. 620; *Luby v. Railroad Co.*, 17 N. Y. 131; *Sweatland v. Telegraph Co.*, 27 Iowa, 433.)

Upon the facts testified to, the trial court committed no error in sustaining the demurrer to the evidence. Therefore the judgment of the district court must be affirmed.

All the Justices concurring.