No. 28,120.

Oscar Hunter, *Appellee*, v. The Barnsdall Refining Company, *Appellant*.

(268 Pac. 86.)

Opinion filed June 9, 1928.

*C. M. Gorrill*, of Kansas City, *John M. Cleary* and *Raymond G. Barnett*, both of Kansas City, Mo., for the appellant.

*A. J. Herrod*, of Kansas City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is a common-law action by an employee against his employer for damages for personal injuries alleged to have been caused by the negligence of defendant in failing to furnish plaintiff

a safe place in which to work. The jury answered special questions and returned a general verdict for plaintiff. Defendant has appealed.

Defendant is engaged in the business of buying and selling petroleum products, and in the conduct of such business maintains a number of filling stations, one of which is situated at Eighteenth street and Argentine boulevard in Kansas City. Plaintiff was in the employ of defendant in charge of this filling station. His work required him to handle and sell gasoline, oils and other petroleum products, and to grease and oil cars, and do all other work connected with the operation of the service station. He alleged that on the afternoon of May 3, 1926, while he was engaged in carrying ten quarts of oil from the station building to an oil table or rack which stands at the south side of the canopy over the driveway, being a part of the station, an automobile, at a very rapid rate of speed, ran through the driveway, and plaintiff, in an attempt to prevent being run into by the automobile, stepped or jumped out of the way, and in so doing, "because of the slippery condition of the loose gravel on the floor of the driveway of said filling station, which gravel had large ruts or holes in it and had been in a dangerous condition for persons attempting to walk thereon for a long time prior to said date, and which condition was and for a long time had been known to the defendant and which the defendant had promised to repair, and which promise plaintiff had relied on, plaintiff was caused to slip and fall, causing him to be thrown against the oil rack," with resulting injury. It was further alleged that defendant was negligent in failing to furnish plaintiff a safe place to work, and in failing to resurface the driveway, after promising so to do, and in permitting the driveway to remain in a defective and dangerous condition, as previously set forth.

In the answer, defendant denied the allegations of negligence in the petition and plead contributory negligence and assumption of risk.

The filling station was situated on a corner of the lot diagonal with the street, with two roadways, one from each street. The roadway nearest to the building was covered with a canopy. The roadways had been constructed with gravel, or chat, and cars passing through would carry a part of it out into the street. There was loose gravel on top of the roadway, and the cars going through had cut

ruts in the loose gravel perhaps two or three inches deep. This condition had existed for about two weeks before the day in question. Oil, for convenience in servicing cars, was kept in quart bottles in two racks holding five bottles each, on a table between the supports of the canopy. Plaintiff, who gave the only evidence as to how his injury occurred, testified that he started out of the filling station with two of these racks, one in each hand, containing ten quarts of oil, and started to walk directly across the driveway to the oil rack; that he looked to see whether any cars were approaching and saw none; that he took two or three steps and then saw a Ford car approaching over the driveway through the station at a high rate of speed. It was about ten feet away when he first saw it. He attempted to get out of the way by going straight ahead; that he got his foot in a rut and fell against the oil table and upset it; that he struck the lower part of his back and hip. The Ford car went right on through the driveway at a speed of twenty or twenty-five miles an hour. He never learned who was driving it. With reference to the condition of the driveway, he testified that there was loose gravel and ruts in it, and oil had spilled on it. The oil came from the dripping of cars that stood in the driveway to be serviced and from oil which he spilled in servicing the cars. Defendant had in its employ a man named Tierney, who went to the filling station each day to check up the amount of products sold and receive the money. Plaintiff spoke to Tierney about the condition of the driveway and told him, "The driveway was in a bad condition and ought to be fixed, and had to be fixed, because we are going to lose business." No complaint was made to Tierney, or anyone else, about the driveway being an unsafe place for plaintiff to work. While plaintiff was in full charge of the station and alleged and testified that it was his duty to do all the work in connection with the operation of the station, he made no effort to sweep any of the gravel or chat back into the ruts, although he had ample time to do so. With reference to just what caused him to fall, he testified that his foot caught in a rut, or slipped in a rut, and perhaps slipped because of the oil on the chat or gravel. He knew the oil was slippery.

With reference to the manner in which the injury was caused, the jury, in answer to special questions, found that plaintiff was in full charge of the filling station; that it was defendant's duty to keep the driveway free from ruts, depressions, or other defects; that the drive-

way was in an unsafe condition at the time; that there was no defect in the driveway that plaintiff could not have remedied; that he did not do so because it was not his duty; that plaintiff's injury was indirectly caused by the fast driving of the Ford automobile through the station, and answered questions 12 and 13 as follows:

"Q. Was plaintiff caused to fall in getting out of the way of the automobile by catching his foot in a rut? A. No.

"Q. Was plaintiff caused to fall in getting out of the way of the automobile by his foot slipping on oil in the driveway? A. Yes."

Defendant's demurrer to plaintiff's evidence, its motion for a directed verdict, and its motion for judgment on the answers to the special questions, were overruled.

Appellant contends there was no negligence on its part to justify the verdict, and that plaintiff, as a matter of law, assumed the risk of the condition of the driveway which the jury found caused his injury. These contentions must be sustained.

It is difficult to see that this driveway was an unsafe place to work. Plaintiff's complaint to Tierney concerned the appearance of the driveway. Some of the gravel or chat had been dragged out on the street by automobiles which had passed over the driveway, and at places in the driveway there were shallow ruts in the loose gravel. Plaintiff thought this prevented the premises from having a neat appearance and would be detrimental to business; that autoists would not be so likely to stop at an ill-kept filling station. Plaintiff made no complaint to Tierney, or to anyone, of the driveway as being unsafe, or as being an unsafe place to work. Obviously he did not so regard it. (See *Railroad Co. v. Mealman,* 78 Kan. 496, 97 Pac. 381, and allied cases.) But we need not dwell on the question whether the loose gravel or ruts in it caused plaintiff's injury, for the jury has eliminated that question from the case by finding that plaintiff did not catch his foot in a rut, and that he was "caused to fall . . . by his foot slipping on oil in the driveway." Considering the evidence before it, the jury found the cause of plaintiff's fall to be oil in the driveway, not loose gravel or ruts in it. Neither party to this action took exceptions to this finding; it was approved by the trial court, and it must stand as binding on this court. So the question before us is, Was the oil shown to be on the driveway negligence of defendant which authorized or justified the verdict? Clearly not. Such oil as there was in the drive-

way got there by two causes: First, the dripping of oil from auto-
mobiles serviced at the station. It is a matter of common knowl-
edge, and was apparently so considered in the trial of this case, that
many automobiles drip a little oil, whether standing or moving.
This is apparent at any filling station, even on the streets and high-
ways. It was a condition not caused by defendant, and could not
have been remedied by it. The other method by which oil got in
the driveway was oil spilled by plaintiff in servicing cars. If that
was negligence of anyone, it was negligence of plaintiff, not of de-
fendant. It is elemental, of course, that negligence of defendant
must be established before recovery can be had in a common law
action for damages.

It seems clear, also, that such oil as was in the driveway was the
usual, natural and perhaps necessary condition of a driveway and
filling station. The fact that oil was likely to be in the driveway
from the dripping of automobiles was a matter well known to plain-
tiff, as well as to defendant, and any danger to plaintiff's safety
arising therefrom was an ordinary, natural and necessary incident to
the conduct of the business—any one in charge of the filling station
would have been subject to the same condition—and hence the risk
of it was assumed by plaintiff from the fact of his employment. In
39 C. J. 705, the rule is thus stated:

"In the absence of an agreement to the contrary, a servant by his contract
of employment, either expressly or impliedly from the circumstances of the
employment, agrees to assume all the risks ordinarily or obviously incident to
the discharge of his duties in the particular employment, and accordingly,
under the well-settled rule that a master is not liable to his servant for in-
juries that are attributable to risks or dangers assumed by the servant, for
injuries sustained by an employee from such risks the employer is not liable.
It will be presumed that the contract was made with reference to such risks.
The servant's assumption of such risks is in the nature of things a part of his
employment, and the employer violates no legal duty to the employee in
failing to protect him from dangers which cannot be escaped by anyone do-
ing such work."

This text is supported by many cases from the federal courts and
from state courts of last resort, including decisions from our own
court, and states the general well-recognized rule.

Appellee cites *Phillips v. Commercial Nat'l Bank,* 119 Kan. 339,
239 Pac. 984, and allied cases, holding in effect that before a servant
can be said to have assumed the risk incident to conditions of the
place at which he works it must appear that he appreciated the

danger of the condition. But this rule has no application here, for from plaintiff's evidence it is clear that he knew the oil made the driveway slippery and appreciated any danger arising therefrom. He testified: "Oil makes everything slippery, you know." Knowing and appreciating the condition, and continuing to work without complaint concerning it, he assumed the risk arising therefrom. (*Barnes v. Akins*, 101 Kan. 359, 166 Pac. 474.)

From what has been said it is clear that defendant's motion for judgment on the special findings, notwithstanding the general verdict, should have been sustained.

The judgment of the court below will be reversed, with directions to enter judgment for defendant.