No. 39,050

NORINE MORRISON, *Appellee*, v. KANSAS CITY COCA-COLA BOTTLING
COMPANY, a Corporation, *Appellant*.

(263 P. 2d 217)

Opinion filed November 7, 1953.

*Frank L. Bates*, of Kansas City, Kansas, argued the cause, and *Donald C. Little*, of Kansas City, Kansas, and *Joseph R. Hogsett, Hogsett, Depping, Houts & James*, of Kansas City, Missouri, were with him on the briefs for the appellants.

*Thomas E. Joyce*, of Kansas City, Kansas, argued the cause, and *Joseph Cohen, Charles S. Schnider, John E. Shamberg, Joseph P. Jenkins*, and *Norma Braly*, of Kansas City, Kansas, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover for injuries sustained by the bursting of a bottle containing Coca-Cola, and from an adverse judgment the defendant appeals.

The substance of the pleadings will be stated only sufficiently to discuss the questions presented by the appellant.

In the petition, after setting forth the status of the parties, plaintiff alleged that she was employed as a waitress at the White Bungalow, hereafter called the restaurant, which sold Coca-Cola manufactured by the defendant; that in the afternoon of October 2, 1951, an employee of defendant, in response to an order, brought into the restaurant a number of cases of Coca-Cola which he placed on the floor behind a lunch counter and about four or five feet from a Coca-Cola cooler, made collection therefor and departed; that about 9:15 o'clock a. m. of the next day plaintiff removed two of the bottles with the intention of placing them in the cooler and while carrying them in her hand from the case, one of the bottles exploded cutting

her hand, and that in removing the bottles from the case in which they were delivered, the plaintiff handled them carefully. Plaintiff further alleged that Coca-Cola is manufactured and bottled by the defendant as a carbonated beverage and that when bottled is charged with carbon dioxide gas which exerts a pressure on the inside of the bottle in which it is contained, and that the bottle would not have exploded if due care had been used by the defendant; that all of the facts concerning the manufacture of Coca-Cola, the bottle in which it is contained and the method of bottling are peculiarly and exclusively within the knowledge of defendant and not of plaintiff and that the explosion of the bottle was due to some act of defendant the exact nature of which was unknown to plaintiff and that her injuries were due to such negligence. She prayed for damages accordingly.

The defendant filed an answer denying generally and alleging the petition failed·to state facts sufficient to state a cause of action. Plaintiff's reply denied any new matter.

A trial was had. At the conclusion of plaintiff's opening statement the defendant moved for judgment in its favor for the reason it was disclosed that plaintiff could not rely upon the doctrine of *res ipsa loquitur* as exclusive control by the defendant was not shown. This motion was denied. The trial proceeded and at the close of plaintiff's evidence, the defendant demurred on the ground that a case under the above doctrine had not been established. This demurrer was overruled and the defendant produced its evidence. Thereafter the defendant moved for a directed verdict, the motion was denied, the jury was instructed, a form of general verdict and special questions were submitted and after consideration the jury returned a general verdict in favor of the plaintiff and answers to the special questions. We note here that those answers, in substance, were that plaintiff was injured by the bottle in question; that her injuries were not caused by some inadvertent act on her part or any person but were the result of negligent acts and omissions of defendant prior to the delivery of the bottle; that the injuries were not caused by an external blow on the bottle after delivery by a person other than servants and employees of the defendant, and that the defendant did not exercise due care in all of the processes involved in compounding, bottling and marketing the bottle in question. In due time defendant filed its motion to set aside the answers to the special questions for the reason they were not sustained by the evidence and were contrary to it, as well as its motion for a new

trial, among the grounds stated being misconduct of the jury, erroneous rulings of the court and erroneous instructions to the jury. These motions were denied and defendant perfected its appeal. Its specification of errors covers the contentions hereafter discussed.

The appellant's two contentions: 1, that the trial court erred in overruling its demurrer to plaintiff's evidence; and 2, that the trial court erred in overruling its motion for a directed verdict, present the same question. The point made is that appellee made no attempt to offer any evidence of specific negligence of the defendant, and that defendant's testimony failed to supply any defect, and more particularly that plaintiff failed to offer any evidence that the bottle in question was in the sole and exclusive control of the defendant at the time of plaintiff's injuries. It is stated, and correctly so, that the only theory of liability pleaded in the petition was *res ipsa loquitur* and that in such case such evidence of sole and exclusive control by defendant is essential. For present purposes it may be said plaintiff's evidence supported the allegations of the petition and that the defendant's driver delivered two cases of Coca-Cola to the restaurant between one and two p. m. on October 2, 1951, that she never touched the cases, no one else moved them and no one else was behind the counter; that about nine to nine thirty the next morning plaintiff took two bottles from one case to put them in the cooler when one bottle exploded in her hand. In support of its contention, that the evidence was insufficient, appellant directs our attention to *Primm v. Kansas Power & Light Co.*, 173 Kan. 443, 249 P. 2d 647; *Sipe v. Helgerson*, 159 Kan. 290, 153 P. 2d 934; *Waddell v. Woods*, 158 Kan. 469, 148 P. 2d 1016; *Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102. In the Primm case injuries arose from an explosion of gaseous fumes and vapors. The doctrine was applied to property damage without extensive discussion, and that opinion will not be reviewed. In the last three of the above cited cases the doctrine of *res ipsa loquitur* was treated at length and what was said there will not be repeated. Without extensive review of the facts in the above cases it may be said that only the Sipe case involved a bottle. It was not contended there the bottle was in any manner defective; it was contended that the bottle and contents had been sold, not by the bottler, but by a defendant catering company, that the empty bottle, in some manner, had been knocked from or thrown over the upper ledge of a grand-

stand and struck the plaintiff while he was in the act of leaving. In referring to former opinions of the court it was said that:

". . . it is essential to application of the doctrine that it must appear the instrumentality which produced or caused the injury complained of was, at the time of the injury, under the sole and exclusive control and management of the defendant, and if it appears that two or more instrumentalities, only one of which was under the defendant's control, contributed to the injury, the doctrine should not be applied." (l. c. 291.)

The Starks Food Markets and the Waddell cases were cited in support. In none of the above cases was there any contention that the defendant was guilty of an act of negligence that preceded the injuries received by the several plaintiffs.

Appellee relies on two of our decisions: *Bradley v. Conway Springs Bottling Co.,* 154 Kan. 282, 118 P. 2d 601, and *Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317. Both cases involved states of fact quite similar to those in the instant case, and reference is made to those cases therefor. In the Bradley case the delivery of the case of filled bottles was only a few minutes before the plaintiff took out a bottle which exploded while in the instant case the interval was about twenty hours. In the Bradley case defendant had demurred to the plaintiff's evidence, which was overruled. The trial proceeded and the jury disagreed. Defendant then appealed from the ruling on the demurrer. In that case the defendant argued that the doctrine of *res ipsa loquitur* could not apply because the bottle, when it exploded, had passed from the possession and control of the defendant into the possession and control of the plaintiff. This court made a review of the authorities where explosions of bottles of various soft drinks were involved, noted the rule that the doctrine was not limited to cases where the injurious agency is in the control of the defendant at the time of injury, but covered cases where it appeared that such agency was in the defendant's control at the time of the negligent act which caused the injury, and affirmed the ruling on the defendant's demurrer.

In the Nichols case, *supra,* decided in June of this year, and after the instant case had been tried below, the application of the doctrine was involved. The appeal arose on a decision overruling a demurrer to the petition in which it was alleged that Nold was a bottler of Pepsi-Cola and that Elsey distributed Nold's product to Whiteman, a retailer who sold some bottles to plaintiff's mother, which she took to her home. Her daughter, the plaintiff, took two

of the bottles and put them on a quilt covering the front seat of an automobile and as she was bending over the bottles one exploded inflicting injuries for which she sought damages. The exact time between purchase of the bottle and its explosion is not stated in the opinion. Although in that case the principal question was the applicability of the doctrine to multiple defendants, this court after reviewing authorities holding the doctrine applicable, stated further:

"Counsel for the appellants Nold and Elsey argue that the doctrine of *res ipsa loquitur* cannot apply to them because they were not in 'control' of the bottle of Pepsi-Cola at the time it exploded, and cite cases holding that one of the essentials of the doctrine is that defendant be in the exclusive control at the time of the accident. Those statements were made in cases in which the circumstances disclosed that the negligence, if any, must have occurred at the time of the accident. The real test is whether defendants were in control at the time of the negligent act or omission which either at that time or later produced the accident. The fact that plaintiff did not know which one of the defendants was guilty of the negligence which was the cause of the accident, or when or where it took place, was the reason for naming all of them as parties defendant." (1. c. 620.)

It was held the petition was not subject to demurrer.

In our opinion the two decisions last noted are controlling here and the trial court did not err in overruling defendant's demurrer to plaintiff's evidence or in denying its motion for a directed verdict.

Appellant's third and fourth contentions will be treated together. They are that instruction No. 8 erroneously submitted the case to the jury on the *res ipsa loquitur* doctrine, and that the instruction was also erroneous ( *a* ) in submitting the question of defendant's control without any evidence to support it, and ( *b* ) in its definition of what would constitute such control. In connection with both contentions, appellant predicates its argument on the premise that the evidence as to possession of the bottle did not exclude the fact that some person other than appellee may not have had access to it or may not have done something to it after the delivery by appellant's employee. Amplifying the review of evidence previously made, it is further noted that in her direct examination, appellee testified that she never touched the Coca-Cola the day it was delivered, no one else moved it, no one else was behind the counter, no one was helping her in the restaurant which she had opened in the morning and stayed until midnight because she had no help, and that she started filling the cooler the next morning around nine o'clock. On cross-examination, she said that sometimes an extra girl worked there, but there was no showing any extra help was pres-

ent on the days in question. She further testified the owner, who testified he had other business interests, came in and worked if she needed him. A customer testified he was in the restaurant drinking coffee and another person came in for a bottle of "Coke" and when appellee took hold of the bottle it exploded in her hand. Morris, the owner of the restaurant, stated he went into the place to check up, had just finished and was seated at the counter drinking coffee, that appellee was filling the cooler and as she was doing so from the case under the counter the bottle exploded. The record does not disclose that he was asked whether he had been behind the counter at any time, nor whether he had had anything to do with the cases of Coca-Cola. If this evidence be credited, no one did anything to the cases of bottles between the time of the delivery of the two cases and the explosion of the one bottle. Appellant stresses the greater length of time elapsing between delivery of the case of bottles and the explosion of one as distinguishing the instant case from *Bradley v. Conway Springs Bottling Co.*, supra. That difference in time may go to the weight to be given the evidence, but as we view it, the principle involved is the same, a principle followed in *Nichols v. Nold,* supra. In our judgment, the evidence warranted submission of the case to the jury under the theory of *res ipsa loquitur* and the instruction complained of was not erroneous for that reason.

Taking up the second part of the contentions last above stated, we have previously dealt with what would constitute control by the defendant of the bottle in question and have reviewed the evidence pertaining thereto, and, without repeating the instruction, we have no hesitancy in saying it was proper under the two decisions we have held to be controlling. We do note some argument that the instruction is made up of statements of law from several different decisions, and our attention is directed to *Kerby v. Hiesterman,* 162 Kan. 490, 493, 178 P. 2d 194, where courts were admonished that instructions should not be composed by carving from our opinions statements which are applicable or controlling only in the cases in which they appear. Conceding that the admonition is sound, it is not to be interpreted as meaning an instruction is erroneous or prejudicial simply because industrious counsel is able to find decisions containing statements quite like those used in the instruction attacked. All instructions are based on principles previously asserted and the fact that parentage of particular parts may be traceable does not condemn them.

In our opinion, the third and fourth contentions cannot be sustained.

Appellant's fifth contention is that the trial court erred in refusing to give to the jury a requested instruction and in giving another in lieu thereof. Appellant's motion for a new trial did contain as a ground "Erroneous instructions given by the court" but did not refer to any instruction in particular. Appellee suggests that on the hearing of the motion for a new trial the matters of the trial court's refusal to give the requested instruction or its error in giving the instruction which it did were not mentioned, and infers appellant should not now be heard on appeal. Remarks of counsel and the trial court on the hearing of that motion were transcribed and are set forth in the abstract and they fail to disclose any argument or comment whatever on the above instructions unless it be included in a statement made by the trial court that it had read a brief submitted by defendant the day before raising the same points raised at the trial. The questions were certainly raised at the trial and we shall consider them.

The requested instruction read:

"You are further instructed that in determining whether the defendant exercised due and ordinary care in connection with the bottle in question, you may take into consideration the measures, methods and precautions taken by other concerns in the vicinity of Kansas City, in compounding, bottling and distributing similar products."

The instruction given was:

"In determining whether or not the defendant in this case exercised reasonable and ordinary care, you are instructed that it was required in the conduct of its business to take such steps for the safety of persons purchasing, handling and using its product as other reasonable and ordinary persons engaged in the same business would be expected to use under like or similar circumstances."

It is not debatable but that the correctness of an instruction is to be tested by the evidence to which it applies, and both appellant and appellee refer to portions of it in their briefs. To show that it exercised due care and was not negligent in the bottling and distribution of its products, the appellant produced the testimony of its plant manager as to its bottling machinery, the processes used and methods followed covering inspection of bottles both before and after being filled, charged, capped and made ready for delivery; the testimony of a salesman of industrial chemicals and cleaners for food sanitation that he had visited appellant's plant and had

observed its operation and inspection methods, and of an expert who testified to bottle strengths, that bottles may burst from internal pressure, from thermal shock or from a mechanical blow or striking of the bottle. He testified as to tests made on bottles like the one involved and that he had examined the pieces of that bottle and in his opinion the bottle was broken by a mechanical blow; and the testimony of the driver of appellant's truck who made the delivery as to how the cases of Coca-Cola were handled. This evidence in narrative form consumes fifty pages of appellant's abstract, and we have carefully examined it, and it may be said that if fully credited, the appellant exercised care in the processes of production and in the inspection of bottles used both before and after the bottle was filled with Coca-Cola, carbonated and capped, and in delivery from its plant to the retailer, and except for some other evidence tending to depreciate its credibility, might be said to show that appellant was not at fault. The other testimony referred to is that each bottle weighs fourteen ounces; that bottles returned to the plant are first culled and broken bottles rejected and the remainder put in mechanical washers; that one washer takes about 700 cases or about 16,800 bottles an hour, which are inspected by one inspector as the bottles leave the machine. Apparently three washers were used. Without going into detail as to various dates, it was shown that on October 1, 1951, there was a total breakage on machine No. 1 of 1,700 pounds of glass; that machine No. 2 was idle; that on machine No. 3 the breakage was 1,330 pounds, or a total of 3,030 pounds of broken bottles. There was further testimony that bottles coming back to the plant from dealers were broken, chipped, nicked, scratched and very roughly treated. After the bottles are filled and capped or crowned, they pass an inspector at 700 cases or 16,800 bottles per hour. The bottling machine, filler and crowner pass the bottles along in rows 28 bottles wide and after inspection as they pass from the machine are mechanically put in wooden boxes or cases, put on a conveyor, and then go to the stock room. The driver of appellant's truck testified how he got the bottled product, loaded his truck and operated it; that every once in a while the cases would contain a bottle without a cap on it, and that he had bottles break but never blow up. Without further recitation it appears that whether the inspection was complete as it should have been and that due care had been used, were questions of fact. Appellant argues that under

the undisputed evidence, the ultimate issue was whether it had exercised due and ordinary care to discover the defective bottle, and that important evidence as to that due care was what other concerns did; that it did not contend that evidence of what other concerns did was conclusive, but it was important evidence which the jury should have considered under proper instructions. We first observe that although in one sense it may be said the evidence as to care is undisputed, in another that is not correct, for considered as a whole, as heretofore mentioned, one part tends to depreciate other parts.

In support of its contention, appellant cites one of our cases and textbook authorities, neither of which treats of instructions. In *Mo. Pac. Rly. Co. v. Holley,* 30 Kan. 474, 1 Pac. 554, it was said (l. c. 475) that the fact an act was ordinarily done in a certain way did not prove that such way was not negligent; that proof of the ordinary way of doing anything establishes care and prudence, but it was prima facie evidence; that before a court is justified in deciding that the ordinary manner of doing anything is negligent, it should be clearly convinced of such negligence for what men ordinarily do is ordinarily prudent. Appellant quotes portions of a section on negligence, dealing with common experience and usage and custom found in 38 Am. Jur. p. 679 *et seq.* including the following:

"The weight of authority supports the view that since negligence is the failure to do that which an ordinarily prudent man would do, or the doing of that which an ordinarily prudent man would not do, under the same circumstances, an ordinary custom, while relevant and admissible in evidence on the issue of negligence, is not conclusive, especially where the custom is clearly a careless or dangerous one. What usually is done may be evidence of what ought to be done, but in the last analysis, what ought to be done is fixed according to the standard of the ordinarily prudent man, whether it is customary to comply with that standard or not. . . . While, as stated, a custom is not conclusive as a standard of reasonable prudence, there is a reasonable basis for the contention that what is ordinarily done by men generally, engaged in a similar activity, has some relevancy to the inquiry as to what an ordinarily prudent person would do under the same circumstances. . . . The conclusion to be reached upon undisputed evidence which shows that the defendant acted in accordance with the uniform custom of persons engaged in a like business, in the absence of any evidence showing that such custom is negligent, should be that the defendant did not act negligently."

Appellant also cites the annotations in 33 A. L. R. 181, 188; 58 A. L. R. 136, 138; and 100 A. L. R. 710, 715, as bearing on the question. Those annotations will not be reviewed.

The question of customary conduct or methods is treated in 65 C. J. S. p. 404 where it is said:

"The common usage of a business or occupation is a test of care or negligence, and is a proper matter for consideration in determining whether or not sufficient care has been exercised in a particular case, at least where the conduct in question is not inherently dangerous; but customary methods or conduct do not furnish a test which is conclusive or controlling on the question, and negligence may exist notwithstanding the conduct pursued or the methods adopted were in accordance with those customarily pursued or adopted."

Tested by the above authorities, and in view of the evidence offered, the instruction requested by the appellant fails to include any statement that customary usages, conduct or methods do not furnish any test which is conclusive and controlling, and that negligence may exist notwithstanding the conduct pursued or the methods adopted by others in the same business, and the trial court committed no error in refusing to give the instruction.

Appellant also contends that the instruction which the trial court did give was meaningless and said nothing except that in weighing its conduct the jury should apply the same standards as they would in weighing the conduct another concern would be expected to use in the same business. We do not agree fully with that analysis. To us the instruction is that appellant was required to exercise that degree of care that others in the same business would use to avoid being guilty of lack of due care, and considered with other instructions as to care, cannot be said to be incorrect or erroneous.

Appellant's final contention is that it was entitled to a new trial because the jury misconducted itself by arriving at a verdict by the quotient method and that the trial court erred in overruling its motion for a new trial. Prior to the hearing of the motion appellant filed affidavits of three of the jurors. The appellee then filed affidavits of the same jurors modifying statements previously made. On the hearing all three appeared and were personally examined, as were two other jurors.

Before reviewing the testimony, we take note of our decisions that where there is a dispute in the oral testimony of jurors as to the facts concerning a quotient verdict, the finding of the trial court controls. We therefore examine the record not to find evidence which would overthrow the trial court's finding the jury's verdict was not arrived at by the quotient method, but to find if there was evidence which supports the finding. In the first place we note that from the testimony as abstracted none of the witnesses testified that

he or any other juror desired to return a verdict in favor of the appellant. We do note, however, the remarks of the trial court when ruling on the question, that some of the jurors thought the appellee should have nothing. Juror Beaumont testified that the jury was not getting any place in arriving at the amount of verdict and that someone suggested that each should put down the amount appellee should have; that was done, the amounts were read, no conclusion was reached, and someone suggested an average be taken and that average, $688.50, was the amount of the verdict rendered. Juror Harris testified to about the same facts and that after the averaging had been done, the question was asked whether the verdict should be the average, or $700, or should the amount be cut down, and all agreed to accept the quotient as the amount of the verdict. Juror Ramsden testified as to taking a ballot and averaging the amounts. His answer to a question whether there was any agreement that the method be followed in reaching a figure which would be the verdict was inconclusive but finally he said he didn't think it was decided that the jury would just take the average figure. Juror Townsend said the jurors agreed to write down amounts on slips of paper and divide by twelve and after that was done the foreman asked each juror individually if that was agreeable. As the trial court, in ruling, put no weight on the testimony of Juror Palmer, we shall not review it. In ruling on the question the trial court stated the verdict was not a quotient verdict merely because the jurors set down amounts which were added together and divided by twelve; that only resulted in a basis upon which to render a verdict; that there was not a bit of testimony, except possibly that of Juror Palmer, that there was any agreement at all before they did the above that they would be bound by it and render a verdict in that amount. The trial court's summary finds support in the evidence quoted above.

A review of our numerous cases wherein it was contended the verdict was a quotient verdict is unnecessary. The subject received attention in the recent case of *Foster v. City of Augusta,* 174 Kan. 324, 256 P. 2d 121, where it was said:

"The iniquity which impeaches 'quotient' verdicts is not the process of averaging damage estimates in arriving at a conclusion, but in agreeing *in advance* to be bound by the unknowable amount which such process may produce." (l. c. 329.)

The above is followed by citation of authority supporting the state-

ment. In addition to our decisions there cited, see also *Newell v. City Ice Co.,* 140 Kan. 110, 34 P. 2d 558, and cases cited, wherein it is made clear there must be agreement in advance of taking the several statements of amounts from individual jurors, that the amounts will be added together, the sum divided by twelve and the quotient shall be the verdict, in order that the verdict be set aside. We conclude that the trial court did not err in its ruling denying the motion for a new trial for the reasons last considered.

From a consideration of the record and of the specification of errors we conclude the judgment appealed from should be, and it is, affirmed.