No. 43,833

CARL UHLRIG, *Appellant,* v. JAMES C. SHORTT, *Appellee.*

(397 P. 2d 321)

Opinion filed December 12, 1964.

*Thomas E. Wright,* of Topeka, argued the cause, and *Harold E. Doherty; Ernest J. Rice,* and *James E. Benfer,* all of Topeka, were with him on the briefs for the appellant.

*John W. Brookens,* of Westmoreland, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a judgment sustaining a demurrer to plaintiff's evidence in an action by a farm hand to recover damages for the loss of an eye.

The facts, which are not in serious dispute, will be related at some length.

Plaintiff was sixty-one years of age at the time of the accident. He was an experienced farm hand, having worked as a farm laborer and filling silos since he was fifteen years old.

On September 5, 1960, defendant was filling a silo and plaintiff was working inside keeping the ensilage level as it was blown in from the top.

The instrumentalities involved and the manner of their use will next be described.

The silo was a tank structure some forty feet in height. On one side openings extended from the top to the bottom of the bank through which the ensilage was removed from storage. The openings were closed by steel plates as doors. The plates, about eight in number, were attached by cross-bars and four bolts, one in each corner. The bolts were inserted from the inside of the silo and fastened with nuts on the outside. As a matter of convenience the plates were put temporarily in place before the filling started. The plates were bolted on loosely with the top bolts but the bottom

bolts were left sticking out of the plates inside the silo. As the ensilage reached the bottom of the plates the man on the inside removed the bolts and then inserted them through to the outside where the nuts were tightened.

The fresh chopped fodder was placed in a vat where it was augered into a blower. The ensilage was then blown to the top of the silo through a solid pipe. At the top of the silo was a gooseneck shaped piece of pipe with the bottom missing. The force with which the ensilage was blown through the pipe carried the ensilage over to the end of the bottomless gooseneck. Extending from the open end of the gooseneck to the bottom of the silo was a flexible distributor pipe composed of individual metal joints, two and one-half to three feet in length, with one end protruding slightly into the other and buckled together with chains. As the ensilage was blown down through this distributor pipe or tube it was the responsibility of the man working inside the silo to move the end of the pipe about so that the ensilage was evenly distributed. As the silo filled a bottom joint was removed and thus the open end of the distributor pipe was kept away from the ensilage.

If the bottom of the distributor pipe touched the ensilage the pipe would fill up and clog. Also, if the joints of the distributor pipe were hooked with too long a chain the distributor pipe would kink, fill up and clog. On occasions when the distributor pipe clogged and filled up the ensilage would come showering down from the bottomless gooseneck above.

Other facts of record, about which there is no controversy, may be stated thus:

The work of filling the silo continued all day Saturday, September 3, 1960, and during the forenoon of Monday, September 5. As the second load was being blown into the silo on Monday afternoon the distributor pipe kinked and plugged up. Ensilage showered down from the gooseneck above. Plaintiff could not see anything because of the showering ensilage. He tried to get to the door to notify the men on the outside. In making that effort he was hit on the head by the distributor pipe and fell. In falling his right eye struck one of the bolts protruding from the bottom of the plate or door, which resulted in the loss of sight in the eye.

The silo was about half full at the time of the injury and plaintiff had assisted in bolting at least one of the plates. It was not unusual for the distributor pipe to clog up. Many times on previous

occasions plaintiff had had the distributor pipe fill up on him. After the work started Saturday morning plaintiff was the only one to touch, handle or control the distributor pipe up to the time of the accident.

The plaintiff further testified:

"A. Naturally, it filled up and it kinked, the bottom end kinked a little bit, you know, it was hooked a little long and it would fill up and fill up just that quick too.

"Q. You knew it would do that because you had it do that before?

"A. Sure I knew it but you can't help it. I didn't notice it was hooked long.

"Q. You have had it do that many times before, haven't you, Mr. Uhlrig?

"A. Sure, it's clogged up before.

"Q. And then, as I understand it, there wasn't anything different, on the day of your accident, that occurred except the fact that you got hurt. Is that right?

"A. That's right."

The record also discloses that the machine was in good operative condition at the time of the accident.

Following the accident plaintiff brought this action against the defendant, James C. Shortt, the owner of the silo. So far as here pertinent his petition alleged:

"(1) That said silo was not a reasonably safe place to work in this:

"a. That the bolt which protruded into the silo was dangerous and likely to cause injury to anyone required to work in said silo, all of which was well known to the defendant.

"b. That plaintiff was required by the defendant to work alone in said silo, whereas it is unsafe and dangerous so to do, which was well known to the defendant.

"(2) That the defendant or his agents and/or employees who were operating the said ensilage blower at the time of the injury to this plaintiff operated it in a negligent manner causing the blower pipe to clog and the distributor pipe to 'whip about' in the silo and to strike plaintiff's head in the manner hereinbefore referred to, causing said injury and blindness."

Defendant responded to the petition with an answer containing a general denial and the following averments:

"The defendant alleges that if the plaintiff was injured and sustained damages, that such injuries were the result of a pure accident.

"Defendant further alleges that if the plaintiff sustained injuries and damages that the said plaintiff assumed the risk of his employment, if any such risk obtained at such time and place, inasmuch as the plaintiff was an experienced farm hand and farm worker."

With issues joined as indicated the case came on for trial by a jury.

At the close of his evidence, which established facts substantially as heretofore stated, the court sustained a demurrer to plaintiff's evidence, discharged the jury, and rendered judgment. Thereupon plaintiff perfected the instant appeal.

The appellant contends that the evidence is sufficient to establish the fact that appellee failed in his duties to provide appellant a safe place in which to work and safe tools and appliances with which to work.

The appellee contends that the evidence showed no failure of duty on his part and if there was any danger in the work being performed by appellant that, under the existing facts, it is clearly established that appellant assumed the risk of injury therefrom.

The appellant responds with the suggestion that the doctrine of assumption of risk does not arise until after the employer has discharged his duty of providing his employee with a safe place in which to work and safe tools and appliances for the particular job.

We will first give consideration to the law, applicable to the facts as related, which will establish the veracity of the contentions advanced by the parties.

At the outset, it may be stated that it is the duty of the employer to provide for his employees a safe place to work, including structure and surroundings, and safe and suitable machinery, tools and appliances with which to work. (*Fishburn v. International Harvester Co.*, 157 Kan. 43, 138 P. 2d 471, and *Taylor v. Hostetler*, 186 Kan. 788, 352 P. 2d 1042.) However, the general rule has so many qualifications, conditions and exceptions that it is seldom, if ever, that it can be used as a single factor to fix the liability of the master for injury to his servant.

An employee cannot recover from an employer unless the employer has been guilty of negligence. The employer must have been guilty of some breach of duty which he owed to the servant. The employer is not to be held liable for an injury to an employee simply because of danger which was inherent in the employment, whether in the place of employment or the cause of the danger inherent in the tools, machinery or appliances with which the work must be performed. A master is not an insurer against injuries which his servants may incur in the discharge of their duties. See, e. g., *West v. Packing Co.*, 86 Kan. 890, 122 Pac. 1024; *Udey v. City of Winfield*, 97 Kan. 279, 155 Pac. 43; *Gentry v. Davis, Agent*, 115 Kan. 335, 222 Pac. 769, and *Hunter v. Barnsdall Refining Co.*, 126 Kan. 277, 268 Pac. 86.

There can be no liability on the part of the employer where it appears that the employee's knowledge of the danger was equal to or surpassed that of the employer. See, e. g., *Fletcher v. City of Ellsworth*, 53 Kan. 751, 37 Pac. 115; *Bank v. Haid*, 97 Kan. 297, 155 Pac. 57; *Railway Co. v. Stone*, 77 Kan. 642, 95 Pac. 1949; and *Ivey v. Railroad Co.*, 99 Kan. 613, 162 Pac. 288.

It is generally agreed that the employer owes the employee the standard of care which is exercised by the average prudent individual in similar circumstances. Generally an employer will not be held liable if he furnishes appliances of a sort in general use, and conducts his business in a manner conforming to the usage of others engaged in the same business under similar circumstances. See, e. g., *Mo. Pac. Rly. Co. v. Holley*, 30 Kan. 474, 1 Pac. 554; *Sanborn v. A. T. & S. F. Rld. Co.*, 35 Kan. 292, 10 Pac. 860; *Morrison v. Kansas City Coca-Cola Bottling Co.*, 175 Kan. 212, 263 P. 2d 217, and *Blackmore v. Auer*, 187 Kan. 434, 442, 357 P. 2d 765.

Where the tools, appliances and machinery are simple or common in nature and free of defects and the employee is experienced in their use, the employer is ordinarily not liable to the employee for injuries resulting therefrom. Knowledge of a defect is necessary to create liability on the part of the employer. (*Hill v. Railway Co.*, 81 Kan. 379, 105 Pac. 447.)

Many of the rules just announced are no doubt a result of the application of the doctrine of assumption of risk. In 35 Am. Jur., Master and Servant, § 299, pp. 722, 723, in considering the risk assumed, the rule is stated thus:

"The injuries for which an employee is barred from recovery by virtue of the doctrine of assumption of risk include but, according to the general accepted statement, do not extend beyond those which result from the 'ordinary' risks of the employment or such as are 'incident' thereto. An assumption of risk merely by virtue of the contract of employment embraces such perils, hazards, and dangers as are ordinarily and normally incident to or a part of the employment in question and of which the employee has knowledge, actual or implied, or of which it may be said that he is presumed to know. Under the head of 'ordinary risks' are classed all those dangers or perils ordinarily incident to the conduct of the particular business in which the employee engages—those which exist after the employer has done everything that he is bound to do for the purpose of securing the safety of his employees. The term includes not merely those dangers which are obvious and open, but also those risks which, while not visible, are nevertheless a natural incident of the employment. The employee does not, however, merely by accepting employment, assume the risks which are not usually and ordinarily

incident to that employment. As thus restricted, the doctrine rests on the thought that the employee, upon entering the employment of the master, assumes all the risks that are ordinarily and usually incident to the service upon which he enters, and if he is injured solely by reason of these perils he is not entitled to recover. . . ."

The doctrine of assumption of risk rests for its support upon the express or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for injuries resulting from his employment. This court has stated that to raise an implied agreement the risk assumed must be known to the employee, or it must be of such a nature as, by the exercise of reasonable observation and caution for his own safety, he should have known it. One, knowing all the danger and peril of pursuing a given course and being under no compulsion to encounter the same, who freely and voluntarily continues therein, cannot recover damages for injuries he may suffer. This court has, in cases too numerous to mention, had occasion to discuss the doctrine of assumption of risk and consider its application. We will not repeat the numerous citations in this opinion but direct attention to *Blackmore v. Auer,* supra, and *Anderson v. Cooper,* 192 Kan. 723, 391 P. 2d 86, where many of our earlier cases are cited.

Although we find no evidence of negligence on the part of the appellee (employer) which would make him liable for injury to the appellant (employee), we must further conclude that, under the uncontroverted facts of the case at bar, the appellant assumed the risk of any hazard which existed in connection with his employment.

The machine which was being operated to fill the silo was in good operating condition and free of defects. There was nothing complicated about the machine and it was being operated in the ordinary manner. There was nothing unusual about the silo in which appellant was working and there were no hidden defects. There is no evidence that the appellee had knowledge of any possible hazards that were not fully known to appellant. Appellant was a man sixty-one years of age and had been doing the same type of work, with the same type of machinery, and the same type of risks since he was fifteen years old. The distributor pipe had kinked and clogged on him on many occasions and he knew it would do so again. He knew exactly where the bolts for the doors were protruding, their nature and their position.

We find no merit to appellant's contention that his evidence presented a question for determination by the jury. Under the existing facts, conditions and circumstances the all-decisive question was one for determination by the trial court. In *Blackmore v. Auer,* supra, we said:

"The assumption of the usual risk of an employment is not ordinarily a jury question. It is a matter of law. It is only where the risk is or may be unusual that a jury question can arise; and even in such cases, if the risk though unusual is obvious, such as an ordinarily prudent man could appreciate and understand, the workman who persists in the employment assumes the risk of it. (*Lively v. Railway Co.,* 115 Kan. 784, 225 Pac. 103, and authorities cited therein.)" (pp. 444, 445.)

What has been heretofore stated and held compels a conclusion that the trial court did not err in sustaining appellee's demurrer to appellant's evidence and that its judgment must be affirmed.

It is so ordered.