W. S. WEST, *Appellee*, v. THE CUDAHY PACKING COMPANY, *Appellant.*

No. 17,553.

### SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Negligence—Safe Place to Work—Accident.* The duty of an employer to provide a safe place for his employee to work does not extend to a place made dangerous by the very work being done. This principle applies to repairs or improvements which in their ordinary progress lead to dangers readily to be foreseen and appreciated by the workmen.

2. —— *Same.* A personal injury to a carpenter engaged with others in making repairs and improvements in stock pens, caused by stumbling over a nail left protruding from a joist in removing the old flooring, is held, in the circumstances stated in the opinion, to be a mere accident for which the employer is not liable.

Appeal from Wyandotte district court. Opinion filed April 6, 1912. Reversed.

*C. Angevine, J. K. Cubbison,* and *William G. Holt,* for the appellant.

*A. W. Little,* and *W. H. McCamish,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The appellee, a carpenter, was injured while working with other employees in repairing stock pens. His testimony tends to prove that each stock pen was about sixteen by eighteen feet in area and

seven feet high. They were constructed in rows composed of three tiers, one above another. The appellee went to work on the day of the injury, on the third tier, and helped to remove some flooring there. At four o'clock in the afternoon he was sent to a pen on the next floor below, where a gang of men were tearing up the flooring, which they had removed from a space about twelve feet wide. As directed, he sawed off some of the joists from which the floor boards had been removed to make room for concrete forms to be used in making supports for new concrete floors. This done, with saw in hand he started to walk across the joists to repeat the operation in a place beyond, stepping upon the joists, which were two inches in thickness. After taking about three steps he stumbled against a nail left standing in the top of a joist by the removal of the floor. He fell forward and his hand struck against another protruding nail, causing the injury. At this time the men engaged in tearing up the floor were two pens in advance of the appellee. The pens were separated by partitions four feet high starting a little above the floor. The appellee knew that in tearing up an old floor nails would be left standing in the joists, the number depending on the soundness of the material removed. He had observed this result in his experience in similar work, and he saw nails in the exposed joists in the floor above where he had worked that morning. When he started to walk over the joists the foreman, with an oath, ordered him to hurry up, and this made him nervous. The brick wall of a building east of the pens and about twenty-five feet from the place of the injury somewhat obscured the light, and while he could see the nails when stooping and using the saw, he did not see them when standing up, as they were rusty and there was filth about them. He testified,

"I don't believe any man could see them just walking around there," and answered questions as follows:

"Q. In your work as a carpenter you are not used to looking for such things? A. Oh, yes, sir.

"Q. You are? A. Yes, sir.

"Q. Don't you go over a building without looking for such things frequently, and have n't you done it in dozens of cases? A. We always look for our way as anybody else.

"Q. And that is the way you have done—that way every carpenter does? A. I try to be as careful as I can.

"Q. But notwithstanding your care you are apt to be injured at some time? A. Yes, sir; sure.

.    .    .    .    .    .  .    .    .    .    .    .    .

"Q. When you cut out those joist did you find any nails sticking in those joist? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. So that you did find some nails in those joist, did you, before you were hurt? A. Yes, sir; they were all around it.

"Q. You knew they were all around it too, did n't you? A. Where I found them I knew it; yes, wherever we could see."

The day was clear, and while the near-by buildings obstructed the light to some extent, it is apparent that it was sufficient for ordinary work if done with reasonable care. The language of the foreman can not be commended, and was offensive, but it can not be judicially declared that the appellant was responsible for negligence for retaining him in service—that being one of the grounds of negligence specified in the petition. Nervousness resulting from the unbecoming language of the foreman can hardly excuse the failure of a man of experience and in the full enjoyment of his faculties, from using due care. The presence of standing nails, if not noticed at the moment of the accident, was well known, and collision with them in walking upon the joists ought to have been anticipated. There was nothing in the condition of the place that would make the

West v. Packing Co.

owner liable to an employee working in such surroundings with the knowledge of the situation possessed by the appellee.

The duty of a master to provide a safe place for his servant to work does not extend to a place made dangerous by the very work being done. This exception manifestly applies in case of repairs or improvements which in their ordinary progress lead to dangers readily to be foreseen and appreciated by the workmen. (*Ballard & Ballard Co. v. Lee's Adm'r*, 131 Ky. 412, 115 S. W. 732; Note, 19 L. R. A., n. s., 340.) It is urged that this principle should not be applied here because the work of tearing up the floor at that point was not in immediate progress when the accident occurred, the men having done that work in that particular spot and moved on perhaps thirty feet further, but this is too narrow a view of the situation. The general work of removing flooring was continued, and was followed by the appellee and others cutting and removing the joists. The work of tearing up the floor in that particular space was as well known to appellee as though he had actually seen it in progress. The consequent exposure of protruding nails was also well known as a usual and necessary consequence of such work, as shown by the plaintiff's testimony.

This court will not extend the doctrine of assumed risks, now being restricted by the trend of judicial decisions in view of changing conditions and resulting dangers; but in this case it only appears that a common line of employment in ordinary conditions has resulted in a mere accident for which the law affords no indemnity.

A demurrer to the evidence was interposed and should have been sustained. The evidence of the appellant did not help the appellee's case. The judgment is reversed and the cause remanded with direction to sustain the demurrer.