No. 18,821.

J. J. MILLER, *Appellee*, v. THE FOUNDATION COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Unsafe Place to Work—Personal Injuries.* In an action for damages for personal injuries it was shown that the employing company in the construction of a bridge was driving piling with the driver placed upon a temporary structure above the surface of the river. Each time the hammer fell it would cause the hammer rope to slacken and strike against the side of the boom near where the plaintiff's duties required him to stand. While thus engaged in the nighttime, with no light except a signal lantern which he held, he was struck by the slack of the hammer rope and thrown from the platform into the river. *Held*, that the plaintiff having been sent to work on the platform and his duties requiring him to remain there, it was, as to him, a place to work, and the duty devolved upon the master to see that it was reasonably safe.

2. SAME—*Assumption of Risk—Contributory Negligence—Questions of Fact.* Upon the facts stated in the opinion it can not be said as a matter of law either that plaintiff assumed the risk or that he was guilty of contributory negligence.

3. INSTRUCTIONS—*Relating to Assumed Risk and Contributory Negligence—Not Prejudicial.* The failure of the court in some of the instructions to distinguish between the defense of contributory negligence and assumed risk is not regarded, upon the facts of the present case, as prejudicial error, the court having in other instructions correctly defined contributory negligence.

Miller v. Foundation Co.

4. EVIDENCE — *That Plaintiff Was Married — Not Materially Prejudicial.* While in an action for personal injuries it is ordinarily error for the plaintiff to be permitted to testify to the fact that he is married, it is held in this case that the admission of such testimony over the objections of the defendant was not materially prejudicial.

5. DAMAGES—*Verdict—Item Not Proven—Judgment Modified.* The jury allowed the plaintiff the full sum claimed in his petition as damages, which included an item of $300 for medical care and attention. There was no evidence to show that plaintiff incurred more than $50 of expense under this item. *Held,* that the judgment should be modified by reducing it $250.

Appeal from Wyandotte district court, division No. 3; HUGH J. SMITH, judge. Opinion filed October 10, 1914. Modified.

*J. E. McFadden, O. Q. Claflin, jr.,* and *O. C. Mossman,* all of Kansas City, for the appellant.

*James F. Getty,* and *W. H. Littick,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In the district court the plaintiff recovered a judgment for injuries alleged to have been occasioned by defendant's negligence. This is an appeal from the judgment.

The defendant was engaged in driving piling for the foundation of a bridge in the river at Kansas City. In the performance of the work it was necessary for defendant to place its pile driver and engine upon a temporary platform twenty feet above the surface of the river. From this structure the mast of the derrick rose to a height of twenty feet. Surrounding the mast above the platform there was a circular frame eight feet in diameter called the "bull-wheel," across which two planks were placed as a flooring, where the plaintiff, at the time he was injured, stood for the purpose of giving signals to the engineer. When the mast and boom turned the bull-wheel turned with it. The cable

attached to the hammer of the pile driver ran over a pulley wheel at the top of the boom and downward, where it connected with another pulley at the bottom of the mast, thence to the hoisting engine. Usually the hammer struck from three to five blows a minute. In the operation of the pile driver the steel cable would slap or strike on the boom when the slack was taken from the weight of the hammer.

The plaintiff, who had formerly been a railroad brakeman, was working with the night crew. He had been giving signals from the platform for two nights prior to his injury. The first and second nights he sat in an opening on the south side of the bull-wheel with his feet resting on the braces below; on the night of the accident he was directed by the foreman to stand upon the two planks which were laid across the platform on the north side. He was given an ordinary lantern to signal with, and there were no other lights at the derrick. It was his duty to receive signals from the foreman at the cofferdam and transmit them to the engineer. The accident occurred about eleven o'clock, shortly after he had changed his position. He claims that in the performance of his duties he was struck by the slack of the hammer line and was knocked off the platform into the river and thereby received permanent injuries.

The negligence charged is the defendant's failure to have a guard rail on the bull-wheel; failure to have guards or appliances to prevent the rope from swaying out from the side of the boom; not warning the plaintiff of the dangers incident to the work; and failure to furnish adequate light so that he could see to perform his duties.

The defendant's contention is that the evidence and answers of the jury to the special questions preclude any recovery. It is also claimed that the case should be reversed for error in the admission of testimony and in giving and refusing certain instructions. These

Miller v. Foundation Co.

questions were raised by a demurrer to the evidence, a request for a peremptory instruction, motion for judgment on the special findings, and a motion for a new trial, upon all of which the court ruled against the defendant.

The jury made findings to the effect that the plaintiff knew the position in which he stood, and also knew there was no railing or banister around the platform; that he knew that each time the hammer fell it would cause the rope to slacken; that while the engine was in constant operation the hammer would drop from three to five times each minute and the slack would throw the rope or cable sometimes as far as three feet; that he could have stood in a position on the platform so that the slackening of the rope would not strike him. To each of the following questions the jury answered, "No":

(11) Did the plaintiff know that it was dangerous for him to stand so close to the boom that the slack of the hammer rope would hit him?

(12) Did the plaintiff know that the hammer rope was liable to hit him if he stood close to the boom?

(13) Did plaintiff know that if the hammer rope did hit him he would be liable to be knocked off the platform into the river?

It is insisted that the findings 11, 12 and 13 are directly contradictory to the plaintiff's admissions; that the jury answered these questions contrary to the evidence in an effort to harmonize their verdict; that all the evidence shows that whatever danger was there was open and apparent, and therefore that as a matter of law the plaintiff must be held to have assumed the risk. It is also contended that, plaintiff having been a railroad brakeman experienced in climbing on and off moving trains in the nighttime with no other light than a signal lantern, he needed no warning of the danger, and that he can not charge the defendant with negligence in failing to furnish a railing around the bull-wheel.

If these questions had all been answered in the affirmative it would not necessarily follow that plaintiff assumed the risk; nor would it establish that he was guilty of contributory negligence as a matter of law. As to assumed risk, he had the right to rely upon the presumption that the defendant, with more experience than himself, had, before sending him there to work, performed its duty and had carefully considered the existing conditions.

"The matter of making the place safe to work in was not his problem. He was not required to take notice of any but the most obvious dangers. But much more than this was required of the employing company. It was under an obligation to consider carefully whether existing conditions involved any unnecessary danger—to use all reasonable care to see that the place was made safe, not only with respect to apparent risks, but also with respect to any that were latent." (*Tecza v. Sulzberger & Sons Co.*, 92 Kan. 97, 101, 140 Pac. 105.)

Under all the circumstances we can not say as a matter of law that the danger resulting from the failure to provide some method of preventing the hammer rope from striking the plaintiff was so obvious that he must have known and appreciated it.

"The servant, to be chargeable with knowledge of a defect in the machinery with which he works, must not only know the physical fact in relation thereto, but he must also know and appreciate the danger resulting therefrom." (*King v. King*, 79 Kan. 584, 587, 100 Pac. 503.)

We are inclined to think, therefore, that the answers to these questions were not material.

It is contended that the findings and evidence show that the work in which the plaintiff was engaged was construction work, and therefore the rule which requires the master to exercise ordinary care to furnish the servant a reasonably safe place does not apply. We can not see how the fact that the pile driver stood upon a temporary structure or that defendant was engaged in construction work affects the matter.

In the case of West v. Packing Co., 86 Kan. 890, 122 Pac. 1024, it was said:

"The duty of a master to provide a safe place for his servant to work does not extend to a place made dangerous by the very work being done. This exception manifestly applies in case of repairs or improvements which in their ordinary progress lead to dangers readily to be foreseen and appreciated by the workmen." (p. 893.)

Of course, where a workman is engaged in removing a flooring he ordinarily assumes the risk of falling through the opening he makes or assists in making, or where he tears up planks and leaves projecting nails he ordinarily assumes the risk of injury in stepping upon the nails or in stumbling over them. That principle, we think, has no application to the situation here. Plaintiff was sent to work on this platform and his duties obliged him to remain there. As to him, it was a place to work; and moreover, it can not be said that as the work progressed it became any more dangerous. The first time the hammer fell after he went upon the platform the slack of the rope might have knocked him into the river. If the work had been carried on in daylight, of course, there would have been less danger of his being struck. Whether reasonable diligence required the defendant to furnish light sufficient to enable plaintiff to avoid the danger, and whether it did not require defendant to provide some appliance to prevent the slack of the rope from striking the plaintiff, were questions for the jury under all the facts and circumstances in evidence. There was therefore no error in the instructions which proceeded upon the theory that, as to the plaintiff, the platform was a place provided by the defendant for him to work. And for the same reasons the court properly refused to give requested instruction number 3. Since it can not be said that the dangers of being struck by the hammer rope were as well known to him as to the defendant, or that in the limited time he had been at work there in

the darkness he appreciated or was capable of knowing and measuring the danger, the case of *Walker v. Scott,* 67 Kan. 814, 64 Pac. 615, and kindred cases relied upon by the defendant are not controlling.

In our view instruction number 11 can not be understood to limit the assumption of risk to a case where the master has adopted the usual and customary means of guarding against accidents. In this instruction, however, as well as in number 13, the court confused the defense of assumption of risk with that of contributory negligence. Numerous cases illustrating the distinction between assumption of risk and contributory negligence will be found annotated in a Note in 49 L. R. A. 33, and a further discussion of the same subject with citation of cases in a Note in 21 L. R. A., n. s., 138. See, also, *Barker v. Railway Co.,* 88 Kan. 767, 129 Pac. 1151. In the present case the court in other instructions correctly defined contributory negligence, and the failure in instructions 11 and 13 to distinguish between the two defenses can not, in view of all the facts of the case, be regarded as prejudicial to the defendant.

Other objections are raised to instruction number 13, but they are not tenable. It can not be said as a matter of law that because plaintiff was furnished with a lantern, there was sufficient light. Whether the defendant was negligent in this respect was a question for the jury. There was no error in refusing to give the requested instructions numbered 10, 11 and 12. The plaintiff testified that until a short time before the accident he gave signals from the south side of the platform with his feet resting on the braces supporting the bull-wheel; that he was then ordered by the foreman to stand on the two planks on the north side; and there was evidence to support the claim that the position he was ordered to take shortly before the accident occurred was more dangerous than the place where he had been at work. We find nothing in the evidence indicating that the injuries were caused by his voluntarily

choosing a dangerous method for the performance of his duties when there was a safer method or place in which he might have stood. At all events his conduct in this respect was for the jury to determine, and the instructions were properly refused.

We have considered the objections to other rulings of the court refusing to give certain requested instructions. Instruction number 6 is practically covered by others given. Instruction number 7 was properly refused. It is true that plaintiff when asked by the foreman, "Can you give signals?" answered, "Yes." From the evidence he seems to have been able to give signals. His answer did not relieve the defendant of the duties imposed upon the master.

Over the defendant's objections a witness was permitted to testify as an expert that it was practicable for such a derrick to be equipped with a contrivance to prevent the rope from flying out on either side of the boom. One method employed, he said, was a couple of 2 x 4's, two feet long, nailed to the boom on either side, which were also used for steps to get up on the boom. He testified also that he had seen a 2x4 fastened on each side from the outer edge of the bull-wheel to the mast above the sheaves. At the request of counsel for plaintiff he made a diagram to explain what he meant, which was also admitted in evidence. There are two objections insisted upon: first, that the cross-examination showed the witness was not qualified as an expert, it appearing that he had only seen one derrick operated under conditions like the one in controversy which was equipped with such appliances; second, that it was a matter that the jury should pass upon without the aid of experts. *Root v. Packing Co.*, 88 Kan. 413, 129 Pac. 147, is relied upon. In that case expert witnesses were permitted to testify to their opinion of what might cause an elevator to fall. The admission of the testimony was held reversible error. It is true that no statute required the adoption of a contrivance for con-

trolling the slack of the hammer rope. The defendant was not obliged to adopt any particular method nor bound by any custom employed by others in the operation of derricks. In actions under factory acts the question of the practicability of guarding dangerous machinery frequently becomes an important issue, but the question whether it was practical or impractical to provide some means for preventing the swaying of the rope was not an issue in this case. It was the defendant's duty to furnish the plaintiff a reasonably safe place to work. Whether the duty had been performed was a question of fact for the jury, but was not to be determined by evidence of what other employers might have done in similar or in different circumstances and conditions. Generally, at least, the master can not justify his conduct in sending a workman into a dangerous place by evidence that it was impractical to make the place safe. For the same reason expert testimony that it was practical would not be competent to show that the master was derelict. But it is apparent that the admission of the testimony as to the practicability of making the place safe could not have been prejudicial. It amounted to nothing more than what the jury would naturally infer from their common observation and experience.

The plaintiff was a witness and was asked if he was a married man. Over the objections of the defendant he was permitted to answer that he was. The court overruled a motion to strike out the testimony. It is claimed that this was prejudicial error. In *Railway Co. v. Hammerlund*, 70 Kan. 888, 79 Pac. 152, a similar question was asked and admitted over timely objections made by the defendant, and in the opinion it was said:

"The impropriety of this proof is not debatable. (*Kansas Pacific Rly. Co. v. Pointer*, 9 Kan. 620; *Railroad Co. v. Eagan*, 64 Kan. 421, 67 Pac. 887.)" (p. 889.)

The case was reversed for the admission of this and other incompetent testimony.

While the admission of this evidence could serve no useful purpose, and might in some contingencies be regarded as prejudicial error, we can not in the present case regard it as ground for a reversal.

Certain evidence offered by the defendant was excluded, but as the defendant did not comply with the provisions of section 307 of the code, by presenting it to the court on the motion for a new trial, the claim of error can not be considered.

The jury allowed the plaintiff the full amount prayed for in his petition, which included an item of $300 for medical care and attention. The attending physician testified that a reasonable charge for his services was $50. There was no evidence to show that the plaintiff became liable for any additional amount under this item. The judgment will therefore be modified by reducing it $250.

Burch, J., dissenting.