No. 32,687

ALBERT BARLOVICH, *Appellee*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellant.*

(58 P. 2d 1061)

Opinion filed July 3, 1936.

*T. M. Lillard, O. B. Eidson, Philip H. Lewis,* all of Topeka, and *A. L. Berger,* of Kansas City, for the appellant.

*George H. West, P. W. Croker* and *S. M. Terbovich,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action was brought under the federal employers' liability act and involves the question of the negligence of the defendant in not furnishing the plaintiff a reasonably safe place

to work and the question of the plaintiff's assuming the risk. Judgment was rendered for plaintiff and the defendant railroad company appealed, insisting first that the overruling of its demurrer to plaintiff's evidence was error.

The plaintiff had for some time been engaged in electric inspection and repair work on engines taken into the roundhouse of the defendant for all kinds of inspection and repairs. On December 9, 1930, at about 10 a. m., he commenced to inspect engine No. 2232, at which time no others of the many workers thereon, except his helper, were on or about that particular engine, there being from twelve to twenty workmen working on the engines during the day, making inspections and repairs along different lines and finishing during the day from twenty to thirty engines. After doing some work on the top of the engine he swung down into the gangway between the engine and the tender, lighting with both feet on the apron or iron platform connecting the engine and tender, then took three steps into the engine cab, where it was dark, and stepped on the edge of a firebrick, and his feet slipped and he fell on his back. He pulled his flashlight and saw it was a firebrick on which he had stepped, not knowing that a firebrick was there. He sat down in the engine cab, and when he got up he felt a sharp pain in the small of his back. He continued his work, feeling pain in his back, until three days later, when he asked to be excused from work and went to see a physician. He did not tell either the foreman or the doctor at that time that he had been injured. Five months later he reported to the foreman about his injury, and later signed a written statement of the same for the company. In his written statement he said he was not certain that it was the firebrick on which he had stepped but he thought it was. He said there were, of course, pieces of coal there and he did not know as to oil or grease, although oil and grease were often on the floor of the engine cab.

Two doctors were called by the plaintiff to testify in his behalf, and they told of the nature of his spinal trouble. Several other witnesses testified as to being neighbors of his, and that before December, 1930, he was very strong and active, and for the next two years thereafter he was stooped over, was lame and did practically no work.

Plaintiff alleged in his petition that the defendant, its agents, servants and employees were careless and negligent in failing and omitting to furnish him a reasonably safe place in which to work;

also in failing, omitting and neglecting to warn him of the dangerous, unsafe and insecure position of said apron or platform and in failing and omitting to remove said firebrick from the engine cab after it had been taken from the firebox.

Appellant maintains that the work on an engine in a roundhouse for repairs with several different kinds of mechanics working on it is an exception to the general rule as to furnishing a reasonably safe place to work. But appellee urges that no one was working on this engine at the time he was injured and that the negligence consisted not in the progress of the work but in leaving behind a firebrick which should have been removed by the workmen who took it out of the firebox.

The case of *West v. Packing Co.*, 86 Kan. 890, 122 Pac. 1024, illustrates the difference urged by the contending parties. It was not the progressive repairs that were being made that caused the injury, but a nail left protruding from a joist in removing the old flooring, on which the workman stumbled and fell. In that case it was held:

"The duty of an employer to provide a safe place for his employee to work does not extend to a place made dangerous by the very work being done. This principle applies to repairs or improvements which in their ordinary progress lead to dangers readily to be foreseen and appreciated by the workmen.

"A personal injury to a carpenter engaged with others in making repairs and improvements in stock pens, caused by stumbling over a nail left protruding from a joist in removing the old flooring, is held, in the circumstances stated in the opinion, to be a mere accident for which the employer is not liable." (Syl. ¶¶ 1, 2.)

In the case of *Patton v. Texas and Pacific Railway Co.*, 179 U. S. 658, 21 S. Ct. 275, Judge Brewer, in the opinion, held the railway company was not guilty of negligence where a workman knowing a car was ordered sent to the roundhouse for repairs attempted to perform some of his usual work on it before sending it and was injured because of some of its defects.

Most of the cases cited by both parties in this case refer to assumption of risk as well as the proposition of a safe place to work, so we shall consider both matters at the same time. Appellee cites the case of *McCoy v. Atchison, T. & S. F. Rly. Co.*, 129 Kan. 781, 284 Pac. 417, where a carpenter was employed with others by the Santa Fe Railway Company to repair and rebuild a viaduct. A wooden structure had become decayed and defective and had to be taken out and replaced. While the carpenter was so employed he

took hold of a brace which had been loosened at one end and it gave way, causing him to fall. Shortly before that time he had used the brace as a support while at work. He was sent away for a post and while away the upper part of this brace had been pried loose, and it was held "that the hazard was an incident of the work for which the employer was not responsible."

Appellee insists that this case makes it conclusive that the assumption of risk is limited to the changes which are constantly being made that arise out of the particular work in which the plaintiff was engaged, and that there could be no assumption of risk when the progress or change was made by workmen not engaged in the same line he was, that it relates only to the particular work in which the injured workman was engaged at the time of the injury complained of, and does not relate to work which is wholly separate and unrelated to that being performed by the one injured. However, this plaintiff knew and testified that there were from twelve to twenty other workmen working on all the engines in the roundhouse making repairs along different lines, and he further testified that probably a boiler worker might have been working there before he went to that engine at ten o'clock. Can he limit his assumption of risk to the dangers incident to the making of electric repairs when he knew other changes and repairs were being made during the same day?

In 39 C. J. 709 it is said:

"The general rule that the servant assumes the risks ordinarily incident to his employment applies, although the work is of a peculiarly hazardous character. The dangerous nature of the service adds nothing to the liability of the master."

Also, on page 711, it is said:

"Where the work in which the servant is engaged is that of construction, he assumes the risks incident to the constantly changing condition of the uncompleted building or structure on which he is at work, as these are risks which are ordinarily incident to the work which he has undertaken."

And on page 345 it is stated:

"The rule does not apply when the place of work and conditions as to safety are constantly changing as the work progresses and the prosecution of the work itself makes the place and creates the danger. . . ."

On page 721 and succeeding pages the different stages of assumed risk are mentioned and defined: the ordinary risks which he assumed although he had no knowledge thereof, and the extraordinary

risks when they are obvious or ought to have. been known or appreciated by him, or when occasioned by the negligence of a fellow servant when obvious or when fully known and appreciated.

In the case of *Luck v. Louisville & N. R. Co.*, 167 Tenn. 350, 69 S. W. 2d 899, the plaintiff was a common laborer and he sued the railroad company under the federal employers' liability act for injuries received in slipping and falling on a temporary platform where he was loading boxes and other material in a car for shipment. He alleged negligence on the part of the railroad company, which was building a bridge over Wolfe creek, in failing to provide a safe place for him to work, especially in allowing grease or oil to remain on the loading platform, and it was said in the opinion:

"Loose bits of iron, wood, or steel, unfinished or unconnected parts, loose tools, and scattered materials are natural and necessary and, of course, well-known incidents of such work, and the risk of stumbling over or slipping on them is one as to which the workman must be constantly on his guard.

"The assumed risk doctrine recognizes two classes—one, the ordinary risks and hazards of the particular occupation; and, two, those defects and risks which though extraordinary are known to the employee, or are plainly observable, although due to some degree of the master's negligence." (p. 354.)

In the case of *Delaware &c. R. R. v. Koske*, 279 U. S. 7, 49 S. Ct. 202, which was a roundhouse case under the employers' liability act, where the work of the plaintiff was to put sand into the boxes on engines and to turn switches for them, and he complained that the railroad company did not furnish a safe place for him to work by permitting an open, uncovered, unlighted and dangerous hole to exist between the tracks, the matter was decided in favor of the railroad company, as indicated by the following statement from the opinion:

"The burden was on plaintiff to adduce reasonable evidence to show a breach of duty owed by defendant to him in respect of the place where he was injured and that in whole or in part his injuries resulted proximately therefrom. And, except as provided in § 4 of the act, the employee assumes the ordinary risks of his employment; and, when obvious or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees." (p. 11.)

In the case of *Gulf, C. & S. F. Ry. Co. v. Jackson*, 65 Fed. 48, plaintiff was injured while assisting in tearing up a portion of the track and laying it farther back from the river bank and there was a cave-in of the river bank which caused the men carrying heavy rails to move forward very hurriedly and one of them fell and the

others thereupon dropped the rails which injured the plaintiff, and it was held:

"Though it is the duty of a master, in many cases, to exercise ordinary care in providing his servants with a reasonably safe place in which to discharge their several duties, he is not required to provide a safe place, in cases where the very work upon which the servant is engaged is of a nature to make the place where it is done temporarily insecure, but in such cases the servant assumes the increased hazard." (Syl. ¶ 1.) (See, also, *Price v. Northern Electric Ry. Co.,* 168 Cal. 173, 142 Pac. 91.)

A different and contrary view is expressed in the case of *Cross v. Chicago, B. & Q. R. Co.,* (Mo. App.) 186 S. W. 1130, which was a roundhouse case where the plaintiff was descending from a ladder and stepped on a hose and fell. The evidence showed he knew the hose had been there for several days. He had seen it there several times, yet he did not know it was there at the time he stepped on it, and it was held:

"Unless, therefore, he was bound to assume that defendant's men had continued to negligently leave it there, in violation of their duty and the regulations of the shop, he did not have actual notice that it was still there at the time he stepped from the ladder. This absence of actual notice that the hose was still there is the difference in the testimony hereinabove referred to." (p. 1131.)

For an exactly contrary view see *Saunders v. Longview, Portland & N. R. Co.,* 161 Wash. 280, 296 Pac. 835.

There are two other items of evidence that thus far have not been discussed in this opinion. They both concern the question of negligence. One is rule No. 78 of the railroad company, which is as follows:

"Passageways must be kept clear of tools, material and litter."

Appellee urges that this rule of the company applies to the gangway between the engine and the tender, and that the presence of the firebrick in the engine cab was a direct violation of that rule and conclusively showed negligence of the defendant company or its employees for whom it was responsible. Even if the gangway was intended to be included in the rule as a passageway, it was known to the plaintiff to have been entirely disregarded, as he stated in the evidence, "there were, of course, pieces of coal there where I fell . . . and always more or less coal around."

The other item of evidence is concerning the flashlight which the company furnished the plaintiff and supplied its parts whenever they needed changing. Although the engine cab where the plain-

tiff fell was dark, he did not use his flashlight until after the fall, and then to see the kind of an object on which he had stepped.

If there is negligence on the part of the railroad company in not furnishing a safe place to work or in not removing this piece of fire-brick before the plaintiff fell, there would seem to be contributory negligence in not using the flashlight to see where he was stepping in the dark, where he knew there was always more or less coal.

In the case of *Missouri Pac. R. R. v. Aeby*, 275 U. S. 426, 48 S. Ct. 177, the station agent slipped and fell on some snow and ice on the platform near the steps when she was returning to the station after being out because of an approaching train, and it was held the railroad company was not liable, and in connection with the use of lamp and lantern furnished by the company, it was said:

"There was no light on the platform. The lamp and lantern were left inside, and it does not appear that either was placed to give light through the bay window or otherwise upon or about the steps or platform." (p. 429.)

In the case of *N. W. Pacific R. Co. v. Bobo*, 290 U. S. 499, 54 S. Ct. 263, 78 L. Ed. 462, where a night watchman on a bridge was drowned, and it was alleged to have occurred because the steps were inadequately guarded, it was said in the opinion in favor of the rail-road company that "He was furnished with a proper lantern to light the way." (p. 502.)

The rule in cases of this kind is that negligence on the part of the defendant is essential to a recovery by the plaintiff, and unless there was negligence the question of contributory negligence and assump-tion of risk are not necessary to the determination of the case. (*Missouri Pac. R. R. v. Aeby*, supra, p. 431.)

In the Patton case Judge Brewer distinguishes as to presumptions of negligence where an accident occurs to a passenger of a railroad company and an employee, using the following language, on page 663:

"That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is prima facie a breach of his con-tract to carry safely . . . a different rule obtains as to an employee. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact for the injured employee to es-tablish that the employer has been guilty of negligence. (*Texas & Pacific Railway v. Barrett*, 166 U. S. 617.) Second, that in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was."

Under the evidence of the plaintiff and these decisions we conclude the plaintiff did not establish the negligence alleged, and even if it might be held to be sufficient to establish such negligence, the plaintiff certainly had assumed the risk, and because of such conclusion the question of contributory negligence in an action of this character is no longer involved.

We think the demurrer of the defendant to the evidence of the plaintiff should have been sustained, and having reached that conclusion there is no purpose in considering the other assignments of error.

The judgment is reversed and the cause is remanded with directions to sustain the demurrer to plaintiff's evidence and render judgment for defendant.