**Hilda PIEPMEYER, Respondent,**

v.

**Hazel JOHNSON, Appellant.**

**No. 54006.**

Supreme Court of Missouri,
En Banc.

March 9, 1970.

Rehearing Denied April 13, 1970.

Walter A. Raymond and Raymond, West & Mason and Edmund M. Field, Kansas City, for plaintiff-respondent.

Robert S. McKenzie, Robert J. Mann, McKenzie, Williams, Merrick, Beamer & Stubbs, Kansas City, for defendant-appellant.

HENLEY, Chief Justice.

This is an action by a domestic employee against her employer for damages for personal injuries suffered as a result of a stumble and fall at the place of employment. Verdict and judgment were for

plaintiff in the amount of $15,000. On an appeal to the Kansas City Court of Appeals that court reversed the judgment of the trial court, holding that plaintiff had failed to make a submissible case. On application of plaintiff, we ordered the case transferred to this court for review and final determination. Article V, Section 10, Constitution of Missouri, V.A. M.S.; Civil Rule 84.05(h), V.A.M.R.

Only two of the four points briefed in the Court of Appeals are presented for our review. One of those two is decisive of the case and we arrive at the same conclusion as that reached by the Court of Appeals. We hold there is no substantial evidence that defendant negligently failed to provide plaintiff a safe place in which to work. Accordingly, the judgment will be reversed and, because it is obvious from the record plaintiff cannot make a submissible case, the cause will be remanded with directions to enter judgment for defendant.

There is no conflict in the evidence. Both plaintiff and defendant testified and their testimony as to material matters is the same.

Defendant, an elderly widow, owned and resided in a large house at 640 West 67th Street Terrace in Kansas City, Missouri. Plaintiff, age 64, a graduate of the University of Missouri and a former school teacher, was employed by defendant as a housekeeper and companion. She had been so employed for about thirteen years before her injury on August 19, 1964. In addition to her room and board she received a weekly salary. The two ladies lived alone in defendant's home and apparently enjoyed working together in the yard tending the flowers when the weather would permit.

Defendant's home consists of nineteen rooms and a garage in the basement; it is located on a lot 80 x 124 feet and faces south from the north side of the street. A concrete driveway runs from the street north along the east side of and to the rear of the house where it widens into a "turn-around"; from there it runs south downgrade into the basement garage. Photographs indicate that the concrete "turn-around", the driveway into the basement, and concrete walks leading to steps at a porch, occupy a large area of the reasonably level yard behind the house. The house and driveway were built some forty years ago, and the driveway is in poor repair and has numerous cracks in it. We are concerned only with that portion of the driveway where plaintiff was injured, the area where it begins its downgrade slope from yard level to basement garage level.

Approximately two years before plaintiff's injury a snowplow tore off a small area of the surface or finish-coat of the driveway at a point where it begins its descent to the garage. Plaintiff was present when this damage was done, and observed it for two years thereafter. The damaged spot gradually enlarged through crumbling. The debris thus created was swept up and removed, from time to time, by plaintiff. At the time of plaintiff's injury, the width and length of this damaged area was about three feet east-west and one and one-half feet north-south; its depth ranged from one-half to one inch at its periphery to one and one-half inches at the deepest point, near the center. Both plaintiff and defendant were familiar with the condition of the damaged area and had been since its origin.

Shortly after breakfast on August 19, 1964, the two ladies went to the backyard to weed and water their flowers; defendant to the northwest part of the yard and plaintiff to the petunias growing along a fence at the east line of the yard. They were inclined to hurry to finish this pleasant chore, because they wanted to return to the comfort of the air-conditioned home before the heat of the day. The petunias needed watering. A teakettle used for watering the flowers was kept under the back porch steps. En route to the steps to get the teakettle, plaintiff walked on the damaged area, caught her toe on

some portion thereof, stumbled, fell, and broke her right leg. Defendant did not see plaintiff fall; she heard her groan with pain, looked up from her work, and went to her assistance.

Plaintiff testified: "I was headed for the teakettle and walking rather rapidly and all at once I felt my toe being caught, the toe of my shoe was caught against something, and I was thrown * * * against the hard cement * * *;" that she "* * * knew it [the damaged area] was there and * * * had walked across it and crossed safely many times * * *;" that she was wearing her glasses and could see perfectly; that she was looking ahead toward the steps and at the path over which she had to walk; that she had no trouble seeing this place as she walked; that she was not carrying anything in her hands. Asked whether she had ever made a conscious effort to avoid or walk around this place, she said: "If I was empty handed, I would walk over, but I can remember walking around it * * * I am sure I saw it and thought I could cross it safely as I had done many times before [this occasion] * * *." Asked whether there was any reason why she could not have walked around this place, she replied: "I could have but, as I said * * *, I had crossed safely many times and I was hurrying * * *."

She further testified that the only occasions she could remember going around this place was when she would push trash barrels on a dolly up the incline from the basement; that she did not remember any other occasions when she would try to avoid it, because "[i]t was not necessary and I usually just crossed it * * *;" that she "* * * did not see any reason for going around it." She further testified that she did not "* * * ever complain of any condition about that house as being dangerous * * *." When asked, "Did you consider that [the damaged driveway] a dangerous place to work * * *," she replied: "Not ordinarily."

The general rule applicable to these facts is stated in Restatement of the Law, Second, Agency, section 492, page 436:

"A master is subject to a duty that care be used either to provide working conditions which are reasonably safe for his servants and subservants, considering the nature of the employment, or to warn them of risks of unsafe conditions which he should realize they may not discover by the exercise of due care."

In the comment on § 492, supra, it is stated that "[t]he master is not an insurer of his servants against harm caused by the working conditions; he is subject to a duty only to see that care is used in providing safe conditions, and, if such care is used, he is not liable to a servant injured by defective conditions." Comment c, § 492, p. 436.

As to the extent of the duty of care, it is said in the comment on § 493 that "[t]he precautions which he [the master] is required to take vary with the dangers of the enterprise in which his servants are engaged. Thus, in a simple business not involving substantial likelihood of harm, the precautions required are correspondingly small." Comment a, § 493, p. 439.

As to the burden of proof, it is said in the comment on § 521 that "[i]n maintaining an action against a master for failing to provide conditions of safety, a servant harmed thereby must allege and prove, not only that the master had reason to believe that the conditions were unsafe, but also that the servant had no knowledge thereof." Comment d, § 521, p. 490.

See also: Dye v. Peterson, Mo.App., 350 S.W.2d 272 [2]; McTurman v. Bell, Mo. App., 398 S.W.2d 465 [4, 6, 9–12]; Dixon v. General Grocery Company, Mo., 293 S.W.2d 415, 418–419; Miller v. F. W. Woolworth Company, Mo., 328 S.W.2d 684; Myers v. Strauss, Mo., 264 S.W. 801.

Plaintiff did not make a submissible case of negligence for the following reasons.

There is no substantial evidence that defendant failed to exercise ordinary care to provide working conditions reasonably safe for her servant, considering the nature of the employment. Like the glass-slick, stone doorsill in Myers v. Strauss, supra, relatively small broken and rough areas in concrete driveways are not unusual; "common observation and experience do not lead to the belief that any element of danger attends their use under ordinary circumstances." 264 S.W. at 801. Plaintiff had walked on and across this damaged spot many times; she did not "ordinarily" consider it to be a dangerous place; she saw no reason for going around it; she considered it unnecessary that she try to avoid it, because she had walked on it many· times before without mishap. The constant and long-continued use of the relatively small damaged area of concrete by plaintiff, and defendant, without the suggestion of a misadventure, demonstrates conclusively that it did not cause the driveway to be not reasonably safe.

Moreover, there was plenty of room on the driveway for plaintiff to have stepped around the damaged area; she was not required to walk on it in the performance of her work and there was no necessity for her to do so. In this connection, the facts here are unlike those in Edmondson v. Hotel Statler Co., 306 Mo. 216, 267 S.W. 612, where the employee was required to work on a defective narrow drainboard, and Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S.W.2d 408, where the employee was required to work in a narrow passageway in close proximity to a dangerous overhanging shelf.

The are other reasons why plaintiff failed to make a submissible case. Even if we assume, contrary to our determination, that the damaged area made the driveway not reasonably safe, plaintiff has failed to prove defendant had reason to believe (1) the condition was unsafe, *and*, (2) that plaintiff had no knowledge of the condition. Plaintiff did not meet her burden of proof; in fact, her evidence that she had knowledge of the condition of the damaged area refutes or disproves her case.

The judgment is reversed and the cause remanded with directions to enter judgment for defendant.

FINCH, DONNELLY, SEILER and HOLMAN, JJ., and WOLFE, Special Judge, concur.

MORGAN, J., not sitting.

STORCKMAN, J., absent.