Harold RICKETTS, Respondent,

v.

KANSAS CITY STOCK YARDS COMPANY
OF MAINE, Appellant.

No. 55726.

Supreme Court of Missouri,
En Banc.

Sept. 11, 1972.

Melvin L. Kodas, James L. Crabtree, Kansas City, for respondent.

Leonard A. O'Neal, Kansas City, for appellant; Brenner, Lockwood & O'Neal, Kansas City, of counsel.

LAURANCE M. HYDE, Special Commissioner.

Action for damages for personal injuries. Plaintiff had verdict and judgment for $125,000.00 from which defendant has appealed. We reverse and remand.

Plaintiff's injury was sustained in Kansas and the Kansas Workmen's Compensation Law is not applicable to defendant. Defendant had rejected the Missouri Workmen's Compensation Act which would have been applicable because plaintiff was hired in Missouri. Thus the general law of Kansas is applicable to determine liability.

Plaintiff was injured by the fall of a concrete gutter May 28, 1964 while working with a crew taking down this concrete gutter from the fourth floor of a concrete hog house built in 1918. There were 17 units, each being a separate house, and each had four floors, not enclosed, with gutters on each. The gutter being taken down, and some others, were leaking and beyond repair. The gutters were made of concrete with steel reinforcing rods in them. Plaintiff was the newest member of the crew of four men, having worked only on the removal of one gutter previously. The gutter was L shaped, the bottom extended out eight inches, the inside wall being the concrete beam at the south edge of the fourth floor, the outer wall extending upward about three feet. The gutter was open at the top and was about 100 feet in length. The method used for removal was to build a scaffold with a walkway about three feet below the bottom of the gutter, so that the bottom of the gutter was about at the hips of a workman and the top of the gutter was near the top of his head. The walkway of the workmen's scaffold was composed of three 2 by 10 inch boards and one 2 by 8 inch board. The total width to the railing at the back being 44 to 46 inches, it extended about 38 inches beyond the overhang of the gutter.

The gutter was removed by chipping off small pieces with pneumatic chipping hammers, estimated as weighing 16 to 20 pounds. There were four men in the chipping crew. One man would work as a chipper and one as a clean-up man from each end of the gutter, the chippers chipping from each end of the gutter toward the middle with clean-up men following with a scoop shovel to shovel the fallen chipped pieces off the scaffold. The men would take turns as chippers and clean-up men. The clean-up men would also clip off the reinforcing rods of the gutter, which were left when the concrete was chipped off, using bolt cutters but some of these rods were so deteriorated that they could be broken off with their hands. The foreman Tribble had charge of the work and gave instructions as to how it was to be done but had other duties and was not present most of the time. He designed and supervised the construction of the scaffold. By 2:00 P.M. on the day plaintiff was injured, which was his first day of work on that gutter, he had chipped off 30 to 35

feet of the west end of the gutter. Workman Kraushaar had chipped off 30 to 35 feet from the east end, leaving a middle section of 30 to 35 feet to be removed. At that time, plaintiff left the scaffold and climbed down to get a drink of water. He climbed back on a fence underneath the unchipped part of the gutter, three or four feet east of where he had left his chipping hammer; and while he was lying on the inside edge of the scaffold walkway with his left leg on it, reaching with his left hand toward a space between the scaffold walkway boards to pull himself up, a large part of the west part of the remaining gutter fell on his back and left foot. The gutter weighed 150 to 200 pounds per lineal foot. Plaintiff sustained serious injuries but because of the result we reach they will not be detailed.

Plaintiff alleged and had expert testimony to support his claims that the scaffold furnished was insufficient for plaintiff to move about and avoid the falling trough; that defendant should have known the gutter was likely to fall and failed to fasten it; and that defendant ordered the trough removed in an unreasonable and unsafe manner contrary to customs and accepted safety practices. It was also alleged that defendant failed to give plaintiff any warning of unreasonable dangers and hazards which existed in the directed manner of accomplishment of his task; that defendant failed to furnish reasonably sufficient and safe appliances and tools; and that defendant failed to provide reasonably sufficient supervisory personnel for the task assigned. Defendant had expert testimony to the contrary, saying it was not negligent in any of these respects. Plaintiff's main claim of negligence was having the men stand below the gutter while chipping it away.

Defendant contends it was entitled to a directed verdict claiming the evidence failed to establish any negligence on the part of defendant that proximately caused injury to plaintiff. Defendant says under the law of Kansas an employer owes no duty to furnish a safe place to work to employees engaged in construction, repair or demolition work or engaged to perform work to make a dangerous place safe, or a safe place dangerous or where in the progress of the work they are constantly changing and creating the place of work, citing McCoy v. Atchison, T. & S. F. Ry. Co., 129 Kan. 781, 284 P. 417; West v. Cudahy Packing Co., 86 Kan. 890, 122 P. 1024; Barlovich v. Union Pac. R. Co., 144 Kan. 186, 58 P.2d 1061; Uhlrig v. Shortt, 194 Kan. 68, 397 P.2d 321. In West the plaintiff's injury was caused by stumbling over a nail left protruding from a joist in removing old flooring. The court said the duty to provide a safe place of work does not extend to a place made dangerous by the very work being done, noting such work leads to dangers readily to be foreseen and appreciated by the workmen, as to which they assume the risk. 122 P., l.c. 1025.

In McCoy v. Atchison, T. & Santa Fe, a viaduct was being repaired and rebuilt. The plaintiff was injured by falling when he took hold of a brace that had been loosened while he went to get a post. It was held that plaintiff knew the braces were being tested and pried loose if so rusted as to be unsafe. The court said: "The danger from the loosened brace was not a hidden one, but was an open and obvious one, which plaintiff could have seen at a glance." 284 P., l.c. 419. The court said making changes was the work being done and plaintiff assumed the risk he encountered.

In Barlovich v. Union Pacific, the plaintiff repairing an engine in a roundhouse fell over a piece of firebrick in the dark while leaving the engine. Plaintiff knew that 12 or more other men were working on engines and it was held that he assumed the risk because he knew of constantly changing conditions. 58 P.2d, l.c 1063. Contributory negligence in failing to use his flashlight was also suggested, l.c 1065.

In Uhlrig v. Shortt, the plaintiff was working in a silo which was being filled.

The distributor pipe clogged and ensilage showered making it difficult to see. In trying to get to the door to have the machinery stopped, plaintiff fell and his right eye struck a bolt protruding from the door. The court noted he had been doing the same kind of work with the same type of machinery for more than 40 years, knew where the door bolts were and that the distributor pipe had clogged on him on many previous occasions. The court held no jury issue was presented because the risk was obvious and could be appreciated and understood. 397 P.2d, 1.c. 326.

Labatt's Master and Servant discussing construction and demolition work (§ 924) says: "In all cases the master must exercise ordinary care to render the place of work reasonably safe for his servants. Where, however, the very progress of the work causes the conditions surrounding the place of work to change, such as in the construction or demolition of a building, or where the work itself consists of rendering a dangerous place safe, the exercise of such ordinary care on the part of the master may, and frequently does, fail to give to the place of work the same amount of safety that the same degree of care would give to a place of work the conditions surrounding which were permanent. The master's duty is not altered, but the results of the exercise of that duty may differ very materially. The mere fact that there are dangers connected with all work of the general character of that here discussed, which ordinary care on the part of the master cannot remove, does not excuse him from liability for injuries due solely to dangers which the exercise of ordinary care would have removed." We do not find the law of Kansas different from this.

█ In Miller v. Foundation Co., 93 Kan. 38, 143 P. 493, the plaintiff was working at night on a platform used by defendant while engaged in driving piling for the foundation of a bridge. The plaintiff was giving signals with a lantern, after receiving signals from the foreman, for hammering piles for the bridge foundation. While performing this duty, the plaintiff was struck by the slack of the hammer line and knocked off the platform into the river. The defendant relied on the ruling in the West case, 122 P., 1.c. 1025, that the master's duty to provide a safe place to work did not apply "in case of repairs or improvements which, in their ordinary progress, lead to dangers readily to be foreseen and appreciated by the workmen." The court said: "That principle * * * has no application to the situation here. Plaintiff was sent to work on this platform, and his duties obliged him to remain there. * * * Whether reasonable diligence required the defendant to furnish light sufficient to enable plaintiff to avoid the danger, and whether it did not require defendant to provide some appliance to prevent the slack of the rope from striking the plaintiff, were questions for the jury * . * *." 143 P., 1.c. 495. Likewise in Consolidated Kansas City Smelting & R. Co. v. Sharber, 71 Kan. 700, 81 P. 476, the plaintiff was removing stays supporting rods extending into a wall, which fell outwardly striking the plaintiff. The court found a jury case was made on removing the stays without shoring up the wall or warning plaintiff of the danger if plaintiff did not know all the facts about the condition of wall known to the company and its foreman. In the present case, defendant's expert witness said, concerning this gutter: "If I thought it was going to fall I wouldn't put men up there." We think the jury could reasonably find that defendant had a better knowledge of all the facts about the condition of the gutter and the probability that it might fall than did plaintiff.

More recently in Guerra v. Jaeger, 204 Kan. 309, 461 P.2d 737, 741, the court said: "It is not in every instance where one exposes himself to known danger that he is denied recovery, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence would not subject himself to it." In that case, the plaintiff sustained an eye in-

jury while employed to apply anhydrous ammonia with farm equipment. Plaintiff, trying to connect a heavy hose to a tank on a farm tractor, dropped the hose and in grabbing for it his hand touched a valve, opening it and spraying ammonia on his face. It was said the plaintiff "was not sufficiently informed and did not have knowledge of the danger and risk involved in handling and applying anhydrous ammonia" and "did not assume the risk and was not guilty of contributory negligence." The court said assumption of risk arises out of implied contract and "rests upon the expressed or implied agreement of the employee that, knowing the danger to which he is exposed, he agrees to assume all responsibility for the resulting injury." The court also said: "The word 'risk' in this connection includes more than a knowledge of conditions. It also includes a knowledge, or an opportunity for knowledge, of the peril of the employee arising from the conditions." This opinion defines contributory negligence "as conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is the legally contributing cause, cooperating with the negligence of the defendant, in bringing about the plaintiff's harm."

■ Defendant herein points out that the scaffold was strong and did not fall, only one floor board was cracked by the fall of the gutter on it. However, plaintiff's claim of negligence is not based on the design or construction of the scaffold but instead it is on the use of a scaffold in the position it was placed, requiring the men to do the work of removing the gutter standing where the pieces of the gutter would fall around them on the scaffold, with the risk that a larger section than intended would fall as it did. Of course, the method of work directed, requiring chipping from the ends of the gutter, must be taken into consideration on the issue of negligence. Likewise, to be considered is plaintiff's statement that before he climbed down, he saw the top edge of the gutter had gaps broken out, was shattered, shaken loose with cracks through it; but he also said "it looked like it was pretty solid." It is also true that if plaintiff had climbed back on the scaffold to the west of where he was chipping he would not have been struck by the falling gutter. Defendant claims this was the sole cause of plaintiff's injuries. Our view is that if defendant had not rejected the Missouri Workmen's Compensation Act, this would have authorized submission of a defense of contributory negligence. However, its rejection of the Act barred this defense. It appears that some Kansas cases may designate as assumption of risk what we call contributory negligence. However, such assumption of risk is also barred as a defense to this defendant because it rejected the Missouri Workmen's Compensation Act. See Moles v. Kansas City Stock Yards Co. of Maine, Mo.App., 434 S.W.2d 752.

Defendant strongly urges that the Kansas cases herein cited recognize a type of assumption of risk which is not barred from consideration in this case by its rejection of the Missouri Workmen's Compensation Act. Defendant says this type of assumption of risk called "contractual assumption of risk" is not a defense but shows the employer owes the employee no duty and so cannot be guilty of negligence, citing Ashton v. Boston & M. R. Co., 222 Mass. 65, 109 N.E. 820; Hedicke v. Highland Springs Co., 185 Minn. 79, 239 N.W. 896; Allen Gravel Co. v. Yarbrough, 133 Miss. 652, 98 So. 117; Maher v. Wagner, 62 S.Dak. 227, 252 N.W. 647; 58 Am.Jur. Workmen's Compensation § 46, p. 607. This kind of assumption of risk was recognized in Patrum v. St. Louis & S. F. R. Co., 259 Mo. 109, 168 S.W. 622. Perhaps the best statement of the two kinds of assumption of risk was made by Justice Frankfurter in his concurring opinion in Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S.Ct. 444, 452, 87 L.Ed. 610, 618: "Thus, in the setting of one set of circumstances, 'assumption of risk' has been used as a shorthand way of saying

that although an employer may have violated the duty of care which he owed his employee, he could nevertheless escape liability for damages resulting from his negligence if the employee, by accepting or continuing in the employment with 'notice' of such negligence, 'assumed the risk'. In such situations 'assumption of risk' is a defense which enables a negligent employer to defeat recovery against him. In the setting of a totally different set of circumstances, 'assumption of risk' has a totally different meaning. Industrial enterprise entails, for all those engaged in it, certain hazards to life and limb which no amount of care on the part of the employer can avoid. In denying recovery to an employee injured as a result of exposure to such a hazard, where the employer has in no sense been negligent or derelict in the duty owed to his employees, courts have often said that the employee 'assumed the risk.' Here the phrase 'assumption of risk' is used simply to convey the idea that the employer was not at fault and therefore not liable."

■ We classify the first kind of assumption of risk under contributory negligence. See Webber v. Terminal R. Ass'n of St. Louis, 335 Mo. 11, 70 S.W.2d 863, and cases cited 866. It is our view that the second type of assumption of risk is not applicable in this case because, we consider, for the reasons hereinabove discussed that there was a jury issue on defendant's negligence.

The verdict directing instruction offered by plaintiff was Instruction No. 3 which was as follows:

"Your verdict must be for the plaintiff if you believe:

"First, defendant failed to provide reasonably safe conditions for work, and

"Second, defendant was thereby negligent, and

"Third, such negligence directly resulted in whole or in part in injury to plaintiff.

"The term 'negligence' as used in this instruction means the failure to use that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances."

Defendant says this instruction was too broad and indefinite, specifying no condition as not being reasonably safe which could constitute the proximate cause of plaintiff's injury. Defendant further says that it authorized a verdict if negligence of defendant "directly resulted in whole or in part in injury to plaintiff"; and points out that this part of the instruction is specifically applicable only to the Federal Employers' Liability Act where there is liability for negligence of a defendant, under the Act, which played any part "even the slightest" in causing plaintiff's injury. See Rogers v. Missouri Pacific R. Co., 352 U. S. 500, 508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493. This instruction's wording in what it submitted follows M.A.I. 24.01 which is designed for submission of F.E.L.A. cases; and for the reasons hereinafter stated should not be used in other cases. The Act provides an employer under it shall be liable "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees." 45 U.S.C. § 51. As recently said in Boeing Co. v. Shipman, 5th Cir., 411 F.2d 365, 371: "Slight negligence, necessary to support an FELA action, is defined as 'a failure to exercise great care,' and that burden of proof, obviously, is much less than the burden required to sustain recovery in ordinary negligence actions. Prosser, Law of Torts, § 34, p. 186 (3d ed. 1964)"; see also Prosser, Law of Torts, § 82, p. 560, noting as to the F.E.L.A. negligence: "This has been said to reduce the extent of the negligence required, as well as the quantum of proof necessary to establish it, to the 'vanishing point.'" This would seem to be a reason for M.A.I. to allow a general submission of negligence in F.E.L.A. cases.

■ To be a legal cause of harm to another one's conduct must be a substantial

factor in bringing about the harm. Restatement of Torts 2d, § 431; see Haggard v. Lowden, 156 Kan. 522, 527, 134 P.2d 676, approving this test; see also Bean v. Ross Manufacturing Co., Mo.Sup., 344 S W.2d 18, 28. Thus both Kansas and Missouri have adopted the Restatement standard that actionable negligence must be a substantial factor. Therefore, the authorization of a verdict if the claimed negligence only resulted "in part in injury to plaintiff" does not meet that standard. This is true because as the United States Supreme Court said in the Rogers case this means any negligence that plays any part "even the slightest." We do not consider this meaning is overcome by use of the word "directly" or the definition of the term negligence at the end of the instruction. It still directs a verdict for negligence that resulted only in part in the injury, thus including even the slightest part. Such an authorization for a verdict can properly be used only in F.E.L.A. cases.

We also consider this instruction too broad and indefinite in submitting only failure to provide reasonably safe conditions of work but not submitting any condition as not being reasonably safe. Our view is that M.A.I. requires such a submission in all usual negligence cases as illustrated by its model instructions 22.01, 22.02, 22.03, 22.04, and 22.05. In 22.01, attractive nuisance provides for a finding describing the artificial condition which attracted plaintiff to it. 22.02, dangerous condition near public thoroughfare provides for a finding describing the artificial condition such as excavation, junkyard with broken glass, etc. 22.03, injury to invitee from fall requires a finding describing substance on floor which caused the fall. 22.04, injury from sidewalk defect provides a finding as to what defect was claimed to make the walk not reasonably safe. 22.05, injury to tenant on parts of premises reserved for common use, provides a finding describing the condition which caused the injury.

Plaintiff's main claim, supported by expert testimony, seems to be that the method used by defendant to remove the gutter was unsafe because the men stood on a scaffold below the gutter and used chipping hammers to make pieces of the gutter fall around where they stood. Plaintiff had evidence that the work could have been done by having the men stationed above the gutter, using safety belts to keep them from falling, while they removed the gutter with jackhammers from above; or could have been done by having the men on stages suspended from above similar to the method used by window washers on high buildings. Plaintiff's verdict directing instruction could have submitted, in accordance with this theory, a finding that the place or conditions of work were unsafe because or on account of having the men work on a scaffold where they would be standing below the gutter they were required to remove. Defendant's evidence was that the method used was as safe or safer than that suggested by plaintiff's expert and that was the issue for the jury to decide. The verdict directing instruction should have required a finding on that issue. For the reason specified we must hold Instruction No. 3 to be prejudicially erroneous.

The judgment is reversed and the cause remanded.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Sp. C., is adopted as the opinion of the Court en Banc.

SEILER, HOLMAN and HENLEY, JJ., concur.

FINCH, C. J., concurs in result in separate concurring opinion filed.

DONNELLY, J., concurs in result and concurs in separate concurring opinion of FINCH, C. J.

BARDGETT, J., dissents in separate dissenting opinion filed.

MORGAN, J., dissents and concurs in separate dissenting opinion of Bardgett, J.

FINCH, Chief Justice (concurring).

I concur in the result reached in the principal opinion for the reasons which follow.

The contract of employment was entered into in Missouri. The employer, as he had a right to do, elected to reject the Missouri Workmen's Compensation Act, but as an incident of that rejection it may not assert as a defense that the employee assumed the risk of injury or that injury was caused in any degree by the employee's negligence. § 287.080, V.A.M.S. See also § 287.110(2), V.A.M.S.; Moles v. Kansas City Stock Yards Company of Maine, Mo. App., 434 S.W.2d 752.

Since plaintiff's injury occurred in Kansas, the substantive law of Kansas controls the affirmative duties which defendant owed to plaintiff with respect to his employment, but the law of Missouri, the forum of the action, determines, as previously stated, that the defenses of contributory negligence and assumption of risk are not available to the defendant. Thus, as the Court said in Moles v. Kansas City Stock Yards Company of Maine, supra, 434 S.W.2d l.c. 755, the effect of waiver of the Missouri Workmen's Compensation Act "is to make the negligence of the employer, or the absence thereof, the sole and only issue to be determined insofar as liability is concerned." If defendant breached a duty or duties to plaintiff in regard to his employment and thereby was negligent and plaintiff was injured as a result, he is entitled to recover. If it did not, the plaintiff may not recover because it is not an insurer against injury to its employees.

Appellant cites and relies upon the cases of West v. Cudahy Packing Co., 86 Kan. 890, 122 P. 1024; McCoy v. Atchison, T. & S. F. Ry. Co., 129 Kan. 781, 284 P. 417;

Barlovich v. Union Pac. R. Co., 144 Kan. 186, 58 P.2d 1061; and Uhlrig v. Shortt, 194 Kan. 68, 397 P.2d 321, as establishing that there was no duty on defendant in this case and that a verdict for defendant should have been directed. However, an analysis of the above cases and the case of Ballard & Ballard Co. v. Lee's Adm'r., 131 Ky. 412, 115 S.W. 732, on which the West case originally relied, discloses that the philosophy of all of these cases is that the "plaintiff assumed the risk which he encountered and that the injury sustained cannot be regarded as the result of defendant's negligence." McCoy v. Atchison, T. & S. F. Ry. Co., 284 P. l.c. 419. This being true, these cases do not mandate a directed verdict in this case because the defense of assumption of risk is not available as a result of defendant's rejection of the Missouri Workmen's Compensation Act.

Appellant also cites Piepmeyer v. Johnson, Mo., 452 S.W.2d 97, as showing that plaintiff did not make a submissible case. However, Piepmeyer related solely to a master-servant relationship, unaffected by a rejection of the Workmen's Compensation Act with its resultant elimination of certain defenses. Hence, the emphasis on knowledge of plaintiff of the dangerous situation and her ability to have avoided the faulty pavement which appeared in Piepmeyer has no application here.

I conclude that under the evidence the issue of whether the defendant was negligent was for the jury and that a verdict should not have been directed. I agree with the conclusion in the principal opinion that Instruction No. 3 was prejudicially erroneous and that the judgment must be reversed and the cause remanded for new trial for that reason.

BARDGETT, Judge (dissenting).

I respectfully dissent. I agree that plaintiff made a submissible case; however, I disagree with that portion of the principal opinion holding that it was reversible error to give instruction No. 3.

In this master-servant case, contributory negligence constituted no defense. MAI does not contain a verdict-directing instruction specifically designed for the non-FELA master-servant cases. The only place where a verdict-directing instruction for a master-servant case appears in MAI is under the heading of Federal Employees' Liability Act as MAI 24.01 and it is basically this instruction the court gave as instruction No. 3. The terminology employed in MAI 24.01 for submitting the question of safe place to work, i. e., "defendant failed to provide reasonably safe conditions for work", is obviously rather general. Nevertheless, it was adopted by the court as the correct method of submitting the issue. I do not believe it can be said to constitute a misdirection to the jury in this case and it does submit the ultimate issue. MAI, 2d edition, page L, "How to use this book", under the heading "IF NO MISSOURI APPROVED INSTRUCTION IS AVAILABLE", says "In these cases counsel will need to research the law, find the elements required to prove the case and then submit them as ultimate issues in the same manner as issues are submitted in Missouri Approved Instructions". In my opinion, instruction No. 3 did precisely this by employing the language found in MAI 24.01 to submit the ultimate issue of unsafe place to work and was not error.

Instruction No. 3 also used the language, "such negligence directly resulted in whole or in part in injury to plaintiff". The principal opinion holds this to be error in a non-FELA case, relying on decisions in FELA cases holding that slight negligence is sufficient in FELA cases to support recovery. It seems to me that the question of whether the language, "such negligence directly resulted in whole or in part . . ." constitutes error ought to be determined by deciding whether ordinary jurors would interpret this language differently than they would the phrase, "directly caused or directly contributed to cause". In my opinion both phrases would mean the same thing to a jury of laymen. No one argued that plaintiff was entitled to recover if the jury found that defendant was just slightly negligent, and the jury was properly instructed on burden of proof by instruction No. 2 (MAI 3.01).

I believe the trial court did follow the philosophy of MAI and that the jury was not misdirected. For these reasons I respectfully dissent.